UNITED STATES, Appellee,

v.

Miguel CARABALLO, Defendant, Appellant.

No. 98–2339.

United States Court of Appeals, First Circuit.

Heard Sept. 8, 1999.

Decided Dec. 29, 1999.

Jonathan R. Saxe, with whom Twomey & Sisti Law Offices was on brief, for appellant.

Jean B. Weld, Assistant United States Attorney, with whom Paul M. Gagnon,

United States Attorney, was on brief, for appellee.

Before STAHL, Circuit Judge, JOHN R. GIBSON,* Senior Circuit Judge, and LYNCH, Circuit Judge.

STAHL, Circuit Judge.

Defendant-appellant Miguel Caraballo appeals the sentence imposed following his conviction for conspiracy to commit interstate transportation of stolen property in violation of 18 U.S.C. § 371. The issue on appeal is the district court's conclusion that a portion of Caraballo's sentence should run consecutively to a state sentence he was already serving for conduct related to the federal offense. Caraballo argues that the relationship between the conduct underlying the two offenses requires wholly concurrent sentencing under section 5G1.3 of the United States Sentencing Guidelines. We disagree, and therefore affirm.

### I.

#### A. Legal Context

The Sentencing Guidelines (the "Guidelines")[1] prescribe a range of months appropriate for each federal offender's sentence. The recommended range takes into account the "offense level" for the violation being punished (the "instant offense") and the defendant's "criminal history category." U.S.S.G. § 5A. The "offense level" consists of a "base offense level" corresponding to the crime for which the defendant has been convicted, as modified by mandatory "adjustments" which take account of certain aggravating or mitigating factors. In determining the applicable offense level, district courts must consider (and must *only* consider) conduct that is "relevant" pursuant to U.S.S.G. § 1B1.3.[2]

Section 5G1.3 of the Guidelines addresses cases in which the defendant, at sentencing, is already serving a term of imprisonment. Subsection 5G1.3(b) requires that when the undischarged term "resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense," the new sentence must run concurrently with, rather than consecutively to, the undischarged term. U.S.S.G. § 5G1.3(b). Where the prior offenses have not been "fully taken into account in the determination of the offense level for the instant offense," however, § 5G1.3(c) allows the sentence for the instant offense to "be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term ... to achieve a reasonable punishment for the instant offense." *Id.* § 5G1.3(c).[3]

* of the Eighth Circuit, sitting by designation.

1. All discussion herein refers to the Guidelines as they existed in 1998, the year in which Caraballo was sentenced. *See United States v. Harotunian*, 920 F.2d 1040, 1041–42 (1st Cir.1990) (noting that absent the specter of ex post facto punishment, defendant's punishment is based on the version of the Guidelines in force on the date of sentencing).

2. Section 1B1.3 defines "relevant conduct" to include:
   (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
   (B) in the case of jointly undertaken criminal activity ... all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.

U.S.S.G. § 1B1.3(a). Such conduct must have "occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." *Id.*

3. Section 5G1.3 reads, in full, as follows:
   § 5G1.3. *Imposition of a Sentence On a Defendant Subject to an Undischarged Term of Imprisonment*
   (a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.
   (b) If subsection (a) does not apply, and the undischarged term of imprisonment result-

At issue is whether conduct that is "relevant" under § 1B1.3 must necessarily be deemed to have been "fully taken into account in the determination of the offense level for the instant offense," irrespective of whether or not that conduct in fact altered the sentencing range for the offense. We find that it need not, and that here, where "relevant" conduct has *not* resulted in any change in the defendant's offense level—or even in his criminal history category—the district court appropriately eschewed § 5G1.3(b) in favor of § 5G1.3(c)'s discretionary approach.

## B. Factual Background

Between 1993 and 1996, Caraballo and several confederates committed numerous burglaries throughout New England. Though not all of the conspirators participated in each burglary, the group's members assisted one another in various ways, engaging in joint research, planning, and execution of the heists.

On November 8, 1995, Caraballo and two partners, Valdir Alvarenga and Nelson Rivera, attempted to burgle Bernie's Appliance Store in Manchester, Connecticut ("Bernie's"). Connecticut police officers had learned of the plan prior to the attack, however, and were lying in wait inside and outside of Bernie's. Upon noticing the officers' presence, Rivera fled the store. During Caraballo's plea colloquy, the district court described the ensuing events, to which Caraballo admitted, thusly:

> [T]here was a confrontation between officers and Alvarenga and Caraballo inside the store. Caraballo, [who] was armed with a pair of long-handled cutting shears, ... moved towards one of the officers in ... an offensive attack

position. At that point the police holstered their weapons.

> Alvarenga noticed that the officers were focused on Caraballo and moved into a position to attack one of the officers.

> The police then observed Alvarenga, armed with an ax, approaching and instructed him to drop the weapon, which he refused to do.... [T]he officer was forced to shoot, and ... Alvarenga ... was mortally wounded.

Caraballo then fled the premises, entered a vehicle outside and began to drive away. Before Caraballo could effectuate his escape, a police officer squeezed his torso through the passenger-side window and ordered him to stop. When Caraballo continued driving, the officer shot him in the leg. Caraballo accelerated, throwing the officer to the ground, and then attempted to run over another officer. Shortly thereafter he was involved in an accident, which led to his apprehension and arrest. No property was taken from Bernie's.

Caraballo was prosecuted in Connecticut's Superior Court on charges stemming from the Bernie's burglary. Although the record is not entirely clear, it appears that he pleaded guilty to burglary and assault on an officer. In any event, on June 28, 1996, the court sentenced Caraballo to an eight-year prison term for the former and a concurrent prison term for the latter.

Caraballo also faced federal charges in the District of New Hampshire, where he was indicted for conspiracy to commit interstate transportation of stolen property in violation of 18 U.S.C. § 371. Twenty-two burglaries were listed as overt acts in furtherance of the conspiracy. One of the listed acts was his "unlawful[ ] ent[ry into] a business operated as Bernie's Store,

ed from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.

(c) (Policy Statement) In any other case, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

U.S.S.G. § 5G1.3.

Manchester, Connecticut." Caraballo pleaded guilty to the conspiracy charge.

Caraballo's Presentence Report ("PSR") recommended that he be held accountable for four burglaries resulting, collectively, in losses of $265,334.00. The PSR also recommended that Caraballo be held accountable for five other burglaries, resulting in either indeterminate loss or, as in the attempted Bernie's robbery, no loss at all. The PSR proposed a base offense level of sixteen (16) under U.S.S.G. §§ 2X1.1 and 2B1.1(b)(1)(K). This calculation included fourteen (14) levels to reflect the loss of $265,334.00[4] plus two (2) additional levels because the burglaries involved "more than minimal planning." U.S.S.G. § 2B1.1(b)(4)(A). The PSR then recommended an additional two (2) levels for reckless endangerment during flight (stemming from Caraballo's escape from Bernie's), see U.S.S.G. § 3C1.2, and two levels for obstruction of justice (stemming from an aborted plot to kill potential adverse witnesses),[5] see U.S.S.G. § 3C1.1. The report subtracted three (3) levels for Caraballo's acceptance of responsibility, resulting in an adjusted offense level of seventeen (17). See U.S.S.G. § 3E1.1. Caraballo's criminal history category, which did not take into account any aspect of the Bernie's incident, was five (5). Caraballo's adjusted offense level and criminal history category together resulted in a sentencing range of forty-six to fifty-seven months. See U.S.S.G. § 5A. The PSR concluded that Caraballo's sentence could be imposed to run concurrently with, partially concurrently with, or consecutively to the prior undischarged term of imprisonment relating to his Connecticut conviction.

Caraballo argued for a wholly concurrent sentence pursuant to U.S.S.G. § 5G1.3(b). He contended that because he received a two-level upward adjustment in his total offense level for reckless endangerment relating to his escape from Bernie's, that burglary—for which he was then serving his Connecticut sentence— had been "fully taken into account" for the purpose of establishing his offense level.

The government requested wholly consecutive sentencing pursuant to U.S.S.G. § 5G1.3(c). The prosecution observed that no upward adjustment had been assigned for the Bernie's incident itself. Indeed, because no merchandise was stolen from the store, no upward adjustment *could have* been assigned. Moreover, the Bernie's incident had not been relied upon in setting Caraballo's criminal history category. For these reasons, the government argued that the crimes for which Caraballo was serving time in Connecticut were not "fully" taken into account, as required in order for § 5G1.3(b) to take effect, and that his sentence should run consecutively to the undischarged Connecticut term.

On November 18, 1998, the district court sentenced Caraballo. The court ruled that the Bernie's incident had not been "fully taken into account" in the offense level determination. The court reasoned as follows: "First of all . . . there were a number of . . . obviously criminal offenses[ ] that occurred there, all of which were not charged . . . [and for some of which] the defendant does not stand convicted and sentenced." Moreover, "[t]here was no dollar loss from the Bernie's burglary, and therefore, [there has] been no adjustment

---

4. The Guidelines assign four "Base Offense Level" levels for theft, plus ten levels for a property loss of between $200,000 and $350,000. *See* U.S.S.G. §§ 2B1.1(a), 2B1.1(b)(1)(K). Where, as here, "the defendant or a coconspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense," the Guidelines assign punishment for conspiracy to commit a substantive offense equivalent to the punishment for

the underlying offense itself. U.S.S.G. §§ 2X1.1(a), 2X1.1(b)(2).

5. At some point during the life of the conspiracy, several members were apprehended. Fearing that their captured comrades would cooperate with the government, Caraballo and one conspirator schemed to kill them. Fortunately, this plan was never carried out.

to the defendant's overall offense level under [U.S.S.G. § ] 2B1.1 .... While reckless endangerment has taken some of these ... offenses into account, ... it certainly hasn't taken all of what went on that evening ... into account fully." Thus, the court determined that the sentence was governed by U.S.S.G. § 5G1.3(c), not § 5G1.3(b). Caraballo received a fifty-seven (57) month sentence, only nine months of which were to run concurrently with his undischarged Connecticut sentence.

Caraballo now challenges the district court's decision to impose only nine months of the 57-month sentence on a concurrent basis. He does not challenge the district court's particular division of concurrent and consecutive time under § 5G1.3(c), but only the court's decision to apply that subsection rather than § 5G1.3(b).

## II.

### A. Standard of Review

■ In reviewing a district court's application of a sentencing guideline, we utilize a bifurcated process. "First, we review the guideline's legal meaning and scope de novo. Next, we review the court's factfinding for clear error, giving due deference to the court's application of the guidelines to the facts." *United States v. Thompson,* 32 F.3d 1, 4 (1st Cir.1994) (internal citations omitted); *see also United States v. Florence,* 143 F.3d 11, 12 (1st Cir.1998).

Unlike many § 5G1.3 controversies, this appeal requires a purely legal determination, and thus calls for de novo review. Disputes involving § 5G1.3 have almost invariably turned on whether or not the prior undischarged term rested on a conviction for conduct that was "relevant" to the instant offense. Typically, as in many of the cases cited by the parties, the central issue has been whether the conduct was "relevant" by virtue of having constituted "part of a common scheme or plan." That inquiry, governed by U.S.S.G.

§ 1B1.3, requires a *factual* determination as to whether the two violations were "substantially connected" by common victims, purposes, modus operandi, or accomplices. *See, e.g., United States v. Joost,* 133 F.3d 125, 132 (1st Cir.1998); *United States v. Sheahan,* 31 F.3d 595, 599 (8th Cir.1994); *United States v. McCaskey,* 9 F.3d 368, 375–76 (5th Cir.1993); *United States v. Shewmaker,* 936 F.2d 1124, 1129 (10th Cir.1991). Such a factual determination merits review only for clear error.

This appeal, however, is atypical. Caraballo was convicted and sentenced in Connecticut for the burglary at Bernie's and for his assault upon an officer during his escape from Bernie's. He does not dispute the district court's factual finding that the burglary and the assault constitute § 1B1.3 "relevant conduct" for the purposes of sentencing the instant offense. Rather, he raises a purely legal question: Amidst undisputed factual findings and conduct that is all admittedly "relevant," how are courts to interpret U.S.S.G. § 5G1.3(b)'s term "fully taken into account"? When interpreting a Guideline, "we cede no deference to the district court's *legal* conclusion." *United States v. St. Cyr,* 977 F.2d 698, 701 (1st Cir.1992). Our review, therefore, is de novo.

### B. Interpreting § 5G1.3

Caraballo contends that, as "relevant conduct," the offenses underlying his Connecticut sentence were necessarily, as a matter of law, "fully taken into account in the determination of the offense level for the instant offense," irrespective of whether that conduct influenced the offense level. We disagree.

#### 1.

Caraballo's argument rests on the contention that § 5G1.3's reference to conduct "fully taken into account" denotes all § 1B1.3 "relevant conduct." Because all relevant conduct is necessarily "taken into account in the determination of the offense level for [an] instant offense," Caraballo's

construction would require us to treat § 5G1.3(b)'s term "fully" as surplusage which does not at all modify the phrase "taken into account." This we may not do.

Any conduct that is "relevant" to the instant offense under § 1B1.3 must be "taken into account in the determination of the offense level for the instant offense." Section 1B1.3 uses mandatory language: The instant offense's base offense level, specific offense characteristics, and adjustments all "*shall* be determined on the basis of" the conduct § 1B1.3 defines as relevant. U.S.S.G. § 1B1.3(a) (emphasis added). Under the Guidelines, then, relevant conduct *must* be "taken into account" by the sentencing judge. Moreover, no other conduct—no *irrelevant* conduct—may be considered. *See id.* In a case such as Caraballo's, where the conduct in which the undischarged term is grounded is concededly "relevant" to the instant offense, that conduct, and only that conduct, is necessarily "taken into account" for the purposes of establishing an appropriate sentence.

■ If *all* conduct that is "taken into account" is necessarily "relevant" under § 1B1.3, then any interpretation positing that relevance is all that is demanded by § 5G1.3(b)'s use of the phrase "fully taken into account" would render meaningless the word "fully." We are prohibited from adopting any such construction, for it is axiomatic that

"[a]ll words and provisions of statutes are intended to have meaning and are to

be given effect, and no construction should be adopted which would render statutory words or phrases meaningless, redundant or superfluous." We think that this principle is fully applicable to the sentencing guidelines, which, although they are not statutes, are to be construed in much the same fashion. *United States v. DeLuca,* 17 F.3d 6, 10 (1st Cir.1994) (quoting *Lamore v. Ives,* 977 F.2d 713, 716–17 (1st Cir.1992)) (internal citations omitted); *see also South Carolina v. Catawba Indian Tribe, Inc.,* 476 U.S. 498, 510 n. 22, 106 S.Ct. 2039, 90 L.Ed.2d 490 (1986) (emphasizing the "elementary canon of construction that a statute should be interpreted so as not to render one part inoperative"); *Colautti v. Franklin,* 439 U.S. 379, 392, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979) (same); *Lopez–Soto v. Hawayek,* 175 F.3d 170, 173 (1st Cir.1999) (same). "Fully" cannot, then, be rendered meaningless, and the term "fully taken into account," in turn, cannot be read to be synonymous with the term "relevant conduct" as defined in § 1B1.3.[6]

**2.**

■ While the Guidelines' structure requires that § 5G1.3(b)'s "fully" must mean something, and that not all "relevant conduct" is necessarily "fully taken into account in the determination of the offense level for the instant offense," precisely what "fully" means—and precisely which subset of "relevant conduct" is specified by that term—requires consideration.[7] As

**6.** Even setting aside the guiding principles of statutory interpretation, we see no reason why the Guidelines would use the term "fully taken into account" in § 5G1.3 if it was intended to be used interchangeably with the term "relevant conduct," which is described with specificity in § 1B1.3. If the Guidelines' drafters had intended the two as synonyms, we believe they simply would have used the already-defined term "relevant conduct" in § 5G1.3(b). The key passage, then, would have forbidden consecutive sentencing when "the undischarged term of imprisonment resulted from offense(s) that constituted 'relevant conduct' in the determination of the offense level for the instant offense," rather

than when it "resulted from offense(s) that have been fully taken into account" in making that determination. The drafters chose not to use the former language, which would clearly and simply have enacted Caraballo's proposed interpretation, and we perceive in that choice a decision to prohibit consecutive sentencing only when the undischarged term is grounded in a behavior constituting a particular subset of "relevant conduct."

**7.** We are mindful of our decision in *United States v. Gondek,* 65 F.3d 1 (1995), a case factually quite distinct from this one. Defendant Gondek was arrested for possession of a

described below, § 5G1.3's central aim is to ensure that no defendant is punished twice for the same crime, while preserving the district courts' discretion where only certain elements of the crime punished in one proceeding also impact crimes punished in another. Where, as here, (1) the $0 loss from the Bernie's burglary resulted in no change in Caraballo's offense level,[8] and could not have so resulted,[9] (2) the Bernie's burglary did not impact Caraballo's criminal history category, and (3) Caraballo's federal conspiracy conviction was grounded in eight other burglaries in addition to the Bernie's heist, the district court properly concluded that the state offense was not "fully taken into account in the determination of the offense level for [Caraballo's] instant [federal] offense." In these circumstances, a partially consecutive sentence will not result in duplicative punishment.

firearm while on parole after serving a state prison term. His parole was revoked and he was sentenced to three years for the violation. Gondek was also prosecuted, and sentenced, under the federal felon-in-possession statute, 18 U.S.C. §§ 922(g)(1), 924(a)(2). The district court set Gondek's sentence to run consecutively to his three-year state term, pursuant to U.S.S.G. § 5G1.3(c). *Gondek*, 65 F.3d at 2. On appeal, Gondek argued, inter alia, that the court should have applied subsection (b) instead. We rejected his claim, finding that § 5G1.3(b)'s "fully taken into account" language required at the least that "the prior criminal conduct is also offense conduct in the present case." *Id.* at 4. There, it was not. Thus, while we noted that § 5G1.3(b) would apply to "a federal prosecution that treated the state offense as relevant conduct in determining the federal offense level," *id.*, we did not have cause to determine the precise circumstances in which such conduct would be deemed to have been so treated.

In this case, however, it is necessary to pursue that inquiry. Gondek's state crime was a parole violation, which was not § 1B1.3 "relevant conduct" with respect to his felon-in-possession prosecution. Caraballo's state crime, though, was a burglary that *was* incorporated into his federal conspiracy prosecution. Thus, here, "the prior criminal conduct is also offense conduct in the present case," and we must proceed to determine whether that conduct was "fully taken into account."

"[S]tatutory construction begins with the actual language of the provision." *United States v. Rivera*, 131 F.3d 222, 224 (1st Cir.1997); *see also Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985); *United States v. Thompson*, 32 F.3d 1, 5 (1st Cir.1994). However, where a provision uses terminology with no clear meaning, courts must interpret such language with reference to the manifest statutory purpose. "The chief objective of statutory interpretation is to give effect to the legislative will." *Passamaquoddy Tribe v. Maine*, 75 F.3d 784, 788 (1st Cir.1996); *see also Negonsott v. Samuels*, 507 U.S. 99, 104, 113 S.Ct. 1119, 122 L.Ed.2d 457 (1993) (" 'Our task [in interpreting statutes] is to give effect to the will of Congress.' " (*quoting Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570, 102 S.Ct.

8. Although such a "change" will, in most instances, mean an *enhanced* sentencing range, § 5G1.3(b)'s "fully taken into account" language could in some circumstances also encompass conduct that results in a *diminished* range.

9. Section 2B1.1 requires that losses resulting from a string of thefts be considered cumulatively. Thus, discrete losses that would push an offender into a higher sentencing range in some circumstances will not do so in others, because the offender will fall within the same category irrespective of that particular loss. Where the conduct resulting in such a loss underlies a previously undischarged term, that conduct has been "fully taken into account in the determination of the offense level for the instant offense" irrespective of whether or not it has actually caused an adjustment to the offense level.

For example, if the Bernie's burglary had resulted in a loss of $50,000, it still would not have impacted the offense level calculation under § 2B1.1(b)(1), because the total loss from all the burglaries would have been $315,334.00, still within the $200,000.00—$350,000.00 range. However, the burglary, in that case, would nonetheless have been "fully taken into account" because there are circumstances in which a $50,000 burglary *could have* made a difference in his sentencing range. The same cannot be said for a $0 loss, which cannot, in any circumstance, impact the sentencing range.

3245, 73 L.Ed.2d 973 (1982))); *Evans v. Commissioner,* 933 F.2d 1, 6 (1st Cir.1991) (consulting statute's "basic purpose" after finding text susceptible to multiple interpretations).

Subsection 5G1.3(b)'s phrase "fully taken into account" is left undefined. We thus strive to interpret it in a manner consistent with § 1B1.3's definition of "relevant conduct" and the principles outlined above. Conduct "taken into account" must include all "relevant conduct" under § 1B1.3, but neither § 5G1.3(b) itself nor the accompanying notes elaborate which particular subset of "relevant conduct" is signified by the word "fully." Thus, in interpreting § 5G1.3, we must attempt to construe the provision in the manner that best effects its intended purpose. *See United States v. DeLuca,* 17 F.3d 6, 10 (1st Cir.1994) (noting that the tools of statutory construction apply to the Guidelines).

In *Witte v. United States,* 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995), the Supreme Court had occasion to consider the purpose behind § 5G1.3. A majority of the Court[10] found that the section was designed "to mitigate the possibility that the fortuity of two separate prosecutions will grossly increase a defendant's sentence." *Id.* at 405, 115 S.Ct. 2199. Where a defendant's related crimes "are not prosecuted in the same proceeding . . . § 5G1.3 . . . attempts to achieve some coordination of sentences . . . with an eye toward having such punishments approximate the total penalty that would have been imposed had the sentences . . . been imposed at the same time (*i.e.,* had all the offenses been prosecuted in a single proceeding)." *Id.* at 404–05, 115 S.Ct. 2199. We have embraced this interpretation of the purpose

animating § 5G1.3, *see United States v. Joost,* 133 F.3d 125, 132 (1st Cir.1998) (stating that section's "core purpose" is "to address the unfairness that would result from receiving a second sentence for activities that were considered as relevant conduct in a prior proceeding" (quoting *United States v. Kimble,* 107 F.3d 712, 714 (9th Cir.1997))), as have several other courts of appeals, *see, e.g., United States v. Dorsey,* 166 F.3d 558, 562 (3d Cir.1999); *United States v. Fuentes,* 107 F.3d 1515, 1523 (11th Cir.1997); *Prewitt v. United States,* 83 F.3d 812, 817 (7th Cir.1996).

■ It is thus widely acknowledged that § 5G1.3 is directed at the prevention of duplicative sentencing for any particular conduct. Only one interpretation would conform § 5G1.3(b)'s "fully taken into account" language to this purpose: Whereas all § 1B1.3 "relevant conduct" must be "taken into account in the determination of the offense level for the instant offense," only relevant conduct that has resulted in—or that *could have* resulted in[11]—a change in the instant offense's "offense level" is *"fully* taken into account" under § 5G1.3(b). That is, only when the defendant's undischarged term of imprisonment "resulted from offense(s) that" not only were "relevant conduct" vís-a-vís the instant offense, but also impacted (or could have impacted) the defendant's offense level or criminal history category, is the district judge bound to choose concurrent sentencing.[12] Otherwise, the judge is free to impose a concurrent, partially concurrent, or consecutive sentence under § 5G1.3(c). This framework ensures that offenders will not be sentenced doubly for any given criminal act. However, it also

---

**10.** The *Witte* Court was fragmented, but five Justices joined in the analysis of U.S.S.G. § 5G1.3.

**11.** *See* note 9, *supra.*

**12.** We note that conduct need not necessarily result in a longer prison term in order to have been "fully taken into account." Because, for consecutive offense levels within any given

criminal history category, the Guidelines prescribe overlapping ranges rather than particular sentences, it is always possible—except in the case of a mandatory "life" term—that an offender sentenced at a given offense level will receive a more severe sentence than an offender sentenced at one level higher. What matters for § 5G1.3 purposes is not the actual sentence but the defendant's offense level.

preserves the district court's authority to impose appropriate punishment when some aspects of the offender's conduct are punishable in one jurisdiction and other aspects are punishable in another.

### 3.

■ Finally, where the defendant's "instant offense" actually incorporates multiple offenses, only some (or one) of which, if sentenced alone, would merit concurrent sentencing under § 5G1.3(b), that subsection's purpose is best served by a rule allowing sentencing of the combined "instant offense" pursuant to § 5G1.3(c). We concur with the Court of Appeals for the Ninth Circuit, which has held:

> A rule requiring application of § 5G1.3(b) where only some of the offenses for which the defendant is serving the undischarged prison term were taken into account would require concurrent sentences in situations where § 5G1.3(b)'s rationale would not fully apply. On the other hand, rejection of § 5G1.3(b) in such multiple-offenses situations would leave the court free fully to consider, under § 5G1.3(c), all of the potential permutations and complexities that arise in a multiple-offenses context.

*United States v. Kimble,* 107 F.3d 712, 715 (9th Cir.1997).

For example, we see no reason why a defendant already serving an undischarged term for multiple offenses, only one of which was "fully taken into account" in determining the instant offense's offense level, should merit a wholly concurrent sentence. Such an outcome would not serve the purpose animating § 5G1.3(b) because the instant offense might well involve violations wholly unrelated to the conduct underlying the undischarged term. In such a case, each prison term would include time for offenses that were not at all accounted for by the other term; mandatory concurrent sentencing would be inappropriate. *See, e.g., United States v. Myers,* 66 F.3d 1364, 1376 (4th Cir.1995) (allowing consecutive sentencing under § 5G1.3(c) where defendants were already serving undischarged term for rape and instant offense level included adjustments for assault and physical injury to the victim, because "there are obvious components of rape that [were] not entirely encompassed by findings of assault and physical injury").

In multiple-offenses cases of this sort, then, district courts are free, under § 5G1.3(c), to choose wholly concurrent, partially concurrent, or wholly consecutive sentencing. The courts' discretion is cabined, though, by that subsection's requirement that the sentence be designed "to achieve a reasonable punishment for the instant offense." U.S.S.G. § 5G1.3(c). Thus, for example, when some, but not all, of the conduct from which the underlying term resulted is "fully taken into account" in determining the offense level for the instant offense, it would be appropriate for the sentencing judge to run that portion of the sentence corresponding to such conduct concurrently with the underlying term. That decision, though, would be governed by § 5G1.3(c), not § 5G1.3(b).

### 4.

In summary, when a defendant is serving an undischarged term for conduct all of which has influenced the final "offense level" applicable to the instant offense, the entire sentence for that instant offense must run concurrently with the undischarged term, pursuant to § 5B1.3(b). When none of the conduct related to the undischarged term influences the instant offense's offense level, the district court is free to impose a wholly concurrent, partially concurrent, or wholly consecutive sentence, in accordance with § 5G1.3(c). When some of the conduct underlying an undischarged term impacted the offense level, but other aspects of that conduct did not, the sentencing judge again enjoys discretion under § 5G1.3(c), but must remain mindful of that subsection's directive that the combined punishment be "reasonable," and of the overarching purpose of

§ 5G1.3—namely, the prevention of duplicative punishment.

## III.

In view of the § 5G1.3 mechanism, as we here interpret it, Caraballo's sentence must be affirmed. Though Caraballo's federal sentence and his Connecticut sentence both punished his attack upon the police officer outside Bernie's, each also addressed conduct that was not taken into account by the other sentence. Specifically, the federal term (and only the federal term) punished the conspiracy with respect to all the burglaries resulting in losses, as well as Caraballo's aborted plot to murder adverse witnesses, while the Connecticut term (and only the Connecticut term) addressed the failed Bernie's heist. Because the federal term was not at all impacted by the Bernie's heist, as the result either of a changed offense level or an increased criminal history category, and because that term addressed crimes other than those addressed by the Connecticut sentence, we are confident that the Bernie's burglary falls into the category of conduct that was not "fully taken into account" for § 5G1.3(b) purposes. In contrast, because Caraballo's assault upon the Connecticut police officer, for which he was sentenced in Connecticut, also resulted in a two-level upward adjustment to his instant offense level, that conduct likely was "fully taken into account."

In this case, then, the district court properly applied § 5G1.3(c), which allows any combination of concurrent and consecutive sentencing. Connecticut law permitted enhanced punishment for Caraballo's attempt to rob Bernie's; federal law did not. No duplicative punishment for the burglary was ever threatened. Caraballo was only forced to bear the full brunt of all conduct deemed illegal by the relevant sovereign. To permit consecutive sentencing in such circumstances is merely to preserve the district court's discretion to ensure just punishment for all criminal conduct.

The district court appropriately addressed the risk of punishing Caraballo doubly for his attack upon the Connecticut police officer by exercising its discretion under § 5G1.3(c) to run *part*—specifically, nine months—of Caraballo's federal sentence concurrently with his Connecticut sentence. Caraballo does not challenge, and we do not address, the district court's application of its discretion under § 5G1.3(c).[13]

In short, because not all of the conduct from which Caraballo's Connecticut term resulted influenced his ultimate offense level, not all of it was "fully taken into account" under § 5G1.3(b). The court below thus correctly chose to apply § 5G1.3(c) instead.

***Affirmed.***

---

13. In light of Caraballo's criminal history category, those nine months correspond roughly to the difference between the sentencing range resulting from an offense level of seventeen (17) (the post-adjustment offense level) and the range resulting from an offense level of fifteen (15) (the offense level that would have applied in the absence of the "reckless endangerment during flight" adjustment). *See* U.S.S.G. § 5A. Moreover, this correspondence is by no means fortuitous. At sentencing, the district court observed that it had "tried to take into consideration to some degree the fact that the sentence that Mr. Caraballo is serving in Connecticut is for offenses that were included in part of the overall conspiracy."