# United States Court of Appeals
## For the First Circuit

_____

No. 01-1850


UNITED STATES OF AMERICA,

Appellee,

v.

ANTHONY CASTRO,

Defendant, Appellant.

_____


APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, <u>U.S. District Judge</u>]


_____


Before

Lynch and Lipez, <u>Circuit Judges</u>,
and Woodlock,[*] <u>District Judge</u>.


_____



<u>Owen S. Walker</u>, Federal Defender Office, for appellant.
<u>David Hennessy</u>, Assistant United States Attorney, with whom
<u>Michael J. Sullivan</u>, United States Attorney, was on brief for appellee.


_____



[*]    Of the District of Massachusetts, sitting by designation.

February 4, 2002
_____

**LYNCH, <u>Circuit Judge</u>**. After pleading guilty to conspiring to possess crack cocaine with intent to distribute, appellant, Anthony Castro, was sentenced to 87 months, or more than seven years, in prison. Castro concedes that he participated in several crack deals, but objects to his 87-month sentence on two grounds. First, he argues that the district court incorrectly calculated the drug quantity on which his sentence was based because, in one of the deals involving 11.6 of the 35.039 grams of crack attributed to him, he acted to assist the buyer, not the seller, and so he says he cannot lawfully be sentenced for the distribution of the 11.6 grams. Second, Castro objects to the district court's consideration of his probation sentence for a prior state crime when calculating his criminal history. Castro says that the alternative to this state probation sentence was not incarceration and so, under the federal guidelines, it is not "probation" of the type that can affect one's criminal history.

We reject the argument that one who acts as the buyer's agent in facilitating a drug deal may not have the drug quantity from that sale attributed to him as relevant conduct. Under U.S.S.G. § 1B1.3(a)(1)(A) and 21 U.S.C. § 846, Castro may be

punished not merely for selling drugs, but more generally for facilitating their distribution and delivery.  We also reject the second argument, based on Castro's state probation sentence, as inconsistent with the clear language of U.S.S.G. § 4A1.2(c)(1)(A), which counts any prior sentence of probation of at least one year.  Finding Castro's arguments to be meritless, we affirm his sentence.

## I.

This case involves the unfortunate story of Anthony Castro who, along with his grandmother, his father, and others, participated in distributing crack cocaine to undercover DEA agents in Fitchburg, Massachusetts.  Castro became addicted to the drugs he distributed.  During a several month period in 1999, Castro was involved in at least twelve crack sales to undercover federal agents.  Castro's role differed from sale to sale; in some cases he was the primary seller, in other cases he merely provided assistance by introducing the agents to other sellers or by acting as an intermediary.

One sale in particular is important to Castro's argument. On October 20, 1999, Castro was involved in the distribution of what turned out to be 11.6 grams of crack. Castro says that, by October, he was no longer dealing crack.  Instead, he had turned to using the drug

and had become severely addicted.  Castro admits that he participated in the October 20 distribution, but claims his participation was limited to assisting the buyer (a federal agent, unbeknownst to Castro) find the best priced crack in town.  (Castro was attempting to make a small profit by charging the buyer a fee in return for providing him with connections to dealers offering the lowest prices.)  In the process of doing so, Castro was present during a transaction between the undercover agent and Robert Rodriguez, a seller with whom Castro admits he was at one point allied.  During this transaction, Castro translated price and quantity terms from Spanish to English and from English to Spanish, thereby facilitating the distribution of 11.6 grams of crack.

A grand jury eventually returned a number of indictments, most of which charged multiple defendants with numerous counts of drug distribution in Fitchburg.  After Castro entered into a plea agreement, the government dismissed the indictments against him, and he pled guilty to a one-count superceding information charging him with conspiring to possess crack cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846.

When Castro was sentenced for this crime, the district

court held him accountable for 35.039 grams of crack, which under U.S.S.G. § 2D1.1(c)(5) yields a base offense level of 30. After a three-point reduction for acceptance of responsibility, U.S.S.G. § 3E1.1, Castro had an offense level of 27. The district court awarded Castro two criminal history points for two prior convictions. One of these two prior convictions was for disorderly conduct, an offense for which Castro was sentenced to one year of probation. The district court awarded Castro an additional two points, under U.S.S.G. § 4A1.1(d), for committing the instant offense while on probation. Four criminal history points translate to a criminal history category of III and, with an offense level of 27, a sentencing range of 87 to 108 months. Because Castro was accountable for 35.039 grams of crack, just over the 35-gram cut-off, the court sentenced him to 87 months, which was the lowest available sentence within the guidelines range.

II.

Our review of legal questions concerning the district court's application of the guidelines is de novo. United States v. Caraballo, 200 F.3d 20, 24 (1st Cir. 1999). Our review of factual findings is for clear error. Id.

A.

First, Castro argues that the drug quantity on which his sentence was based was incorrectly calculated because it included 11.6 grams from the October 20 transaction. Castro claims that during that transaction, he intended solely to help the buyer, a federal agent, rather than the seller, Rodriguez. It is undisputed that he sought to introduce the agent to sellers other than Rodriguez, which was against Rodriguez's interest. Castro concedes that he facilitated the 11.6 gram transaction; his only argument is that he facilitated the purchase and not the sale. The district court found that Castro facilitated the transaction and concluded that it did not matter whether Castro was acting as an agent of the buyer or as an agent of the seller. We agree.

We think the aggregation of the drug quantities for the transactions involving facilitation by Castro fits comfortably

as relevant conduct within the scope of U.S.S.G. § 1B1.3(a)(1)(A). Under subsection (a)(1)(A), the question is whether the distribution was an act "committed, aided, abetted, . . . or willfully caused by" Castro "that occurred during the commission of the offense of conviction." Castro was convicted under 21 U.S.C. § 846 for conspiracy to violate 21 U.S.C. § 841(a)(1), which renders it "unlawful for any person knowingly or intentionally . . . to . . . distribute, . . . or possess with intent to . . . distribute, . . . a controlled substance." A defendant can be found to have aided or abetted distribution if the defendant "associated himself with the underlying venture, participated in it as something he wished to bring about, and sought by his actions to make it succeed." United States v. Rullan-Rivera, 60 F.3d 16, 19 (1st Cir. 1995) (quoting United States v. Clifford, 979 F.2d 896, 899 (1st Cir. 1992)) (internal quotation marks omitted).

There is no question that Castro aided or abetted the October 20 distribution. Castro told the buyer that Rodriguez would get the crack right away and asked the buyer, on Rodriguez's behalf, if the buyer had the money to purchase the crack. He also interpreted the Spanish conversation between Rodriguez and another seller and advised

the buyer that the crack would weigh sixteen or seventeen grams. On these facts, the 11.6 gram possession with intent to distribute was properly attributed to Castro under subsection (a)(1)(A).[1]

Castro responds that his participation in the distribution was limited to aiding the buyer. Castro's "buyer's agent" defense has long been rejected by this and other circuits as a defense to drug distribution under 21 U.S.C. § 841(a)(1). United States v. Porter, 764 F.2d 1, 10-12 (1st Cir. 1985) (collecting cases); accord United States v. Pruitt, 487 F.2d 1241, 1243 (8th Cir. 1973) (collecting cases); see also Minor v. United States, 623 A.2d 1182, 1186 (D.C. App. 1993) (noting "uniform agreement among the federal courts" that the "agent of the buyer" defense does not exist under § 841(a)(1)). Section 841(a)(1) contains a broad prohibition on distribution rather than a narrow one on sale, and so it does not matter that

---

[1]    The October 20 distribution was a "reasonably foreseeable act[ ] . . . in furtherance of [a] jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). Thus Castro is also liable for that transaction under subsection (a)(1)(B) because the October 20 transaction was obviously foreseeable by Castro (indeed, he actively participated in it) and in furtherance of an ongoing conspiracy to distribute crack.
    Because, however, the transactions for which Castro was held liable involved substantive distributions which he personally facilitated (rather than planned transactions or transactions by other conspirators while he was a member of the conspiracy) we think treatment as an aider and abetter under subsection (a)(1)(A) is a better analytical fit.

Castro sought to help the buyer rather than the seller when he facilitated the distribution. The relevant statute makes this point explicitly: it defines "distribute" as "to deliver," 21 U.S.C. § 802(11), and it defines "deliver" as "the actual, constructive, or attempted transfer of a controlled substance . . . <u>whether or not there exists an agency relationship</u>," <u>id.</u> § 802(8) (emphasis added). Accordingly, it is enough that Castro participated in the transfer of crack cocaine from Rodriguez to the undercover agent. Regardless of whether Castro was acting to help the buyer or the seller, he facilitated the transfer of the drug and that is sufficient to expose him to liability for that transaction for sentencing purposes.[2]

## B.

Second, Castro objects to the district court's consideration of his probation sentence for a prior disorderly

---

[2] In contrast, under former 26 U.S.C. § 4705(a) (repealed 1970), the law prohibited sale of certain drugs, rather than distribution, and so acting solely as an agent for the buyer was sometimes a valid defense to a charge of selling. <u>United States</u> v. <u>MacDonald</u>, 455 F.2d 1259, 1261 (1st Cir. 1972); <u>United States</u> v. <u>Barcella</u>, 432 F.2d 570, 571 (1st Cir. 1970). The Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. No. 91-513, 84 Stat. 1236 (codified as amended at 21 U.S.C. §§ 801-971 and in scattered sections of titles 18, 21, and 42), which repealed the subchapter of the Code including 26 U.S.C. § 4705, prohibits distribution. 21 U.S.C. § 841(a)(1). The prohibition on distribution is broader in scope than the former prohibition on sale -- the claim that one acted on the buyer's behalf is not relevant to the charge that one participated in a distribution. <u>Porter</u>, 764 F.2d at 11; <u>accord</u> <u>Pruitt</u>, 487 F.2d at 1245.

conduct conviction when calculating his criminal history.[3]  He says that violation of his probation sentence could not have resulted in jail time under state law and so, under the guidelines, it is not "probation" of the type that can affect one's criminal history.  The district court concluded that, under the clear text of U.S.S.G. § 4A1.2(c), the offense was properly scored.  We agree.

Massachusetts law provides that "idle and disorderly persons, [and] disturbers of the peace . . . may be punished by imprisonment . . . for not more than six months, or by a fine of not more than two hundred dollars, or by both."  Mass. Gen. Laws ch. 272, § 53 (2000).  Nonetheless, Castro says his one year probation sentence was not an alternative to jail time because when he first appeared in state court on his disorderly conduct charges, the judge declined to appoint counsel[4] and informed him that his sentence would

---

[3]    Whether the court considers Castro's disorderly conduct conviction as a prior conviction for purposes of computing his criminal history under the guidelines is important, he says, because if this prior conviction counts, then Castro's criminal history category is III, which yields a sentencing range of 87 to 108 months, but if this conviction does not count, then Castro's criminal history category is II, which yields a sentencing range of 78 to 97 months.

[4]    It may be that counsel did in fact represent Castro before he actually received his probation sentence and so he

-10-

not include any jail time.  The judge applied Mass. Gen. Laws ch. 211D,

§ 2A (2000), which provides that

> a criminal defendant charged with a misdemeanor or a
> violation of a municipal ordinance or bylaw need not
> be appointed counsel if the judge, at arraignment,
> informs such defendant on the record that, if the
> defendant is convicted of such offense, his sentence
> will not include any period of incarceration.  For
> good cause, that judge or another judge of the same
> court may later revoke such determination on the
> record and appoint counsel, and on the request such
> counsel shall be entitled to a continuance to conduct
> any necessary discovery and to prepare adequately for
> trial.

Castro then says that probation, as defined by a single

dictionary, is a sentencing alternative to jail and that, because jail

was not an option, he was not sentenced to "probation" as the term is

sometimes defined.  Castro also points to U.S.S.G. § 4A1.1, application

note 4, which states that probation counts as a criminal justice

sentence but a sentence to pay a fine does not.  He says that it would

be absurd for his probation to count toward his criminal history when

the more severe sentence to which he might have been subject under

Mass. Gen. Laws ch. 272, § 53, was a two hundred dollar fine, which

would not be counted.

The clear text of the guidelines defeats Castro's argument.

Under U.S.S.G. § 4A1.2, which provides instructions for computing

---

could have received jail time.  For purposes of the issue here,
we need not resolve the matter.

criminal history, sentences for disorderly conduct are counted toward one's criminal history only if "the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days" (or if the instant offense is similar to the prior disorderly conduct offense). U.S.S.G. § 4A1.2(c). Castro's disorderly conduct conviction resulted in a sentence of "probation of at least one year" and so the district court correctly counted it. We will not rewrite the text of the guidelines where, as here, the Commission has expressed a clear intent to count sentences to probation of at least one year as criminal history. See United States v. Talladino, 38 F.3d 1255, 1265 (1st Cir. 1994).

In addition, it is not absurd to count disorderly conduct convictions that result in probation sentences of at least one year, but to refrain from counting similar convictions that result only in a fine. The "at least one year" requirement imposed by the guidelines, U.S.S.G. § 4A1.2(c)(1)(A), reflects a plausible determination that disorderly conduct convictions resulting in at least one year of probation are the type of convictions that are sufficiently serious to be included in one's criminal history, while such convictions, should they result only in a fine, are not. The supervisory element of a

one year probation sentence alone could be deemed more severe punishment than a fine and thus it would be sensible to count a one year probation sentence and not a fine.

Finally, the factual premise of Castro's argument is flawed. Castro argues that because the court invoked Mass. Gen. Laws ch. 211D, § 2A, at his arraignment, he could not receive a prison sentence as an alternative to his probation. But Castro could have received a prison sentence; by engaging in disorderly conduct, he exposed himself to a fine or jail time. Mass. Gen. Laws ch. 272, § 53. That the judge chose not to appoint counsel, thereby removing the prison option,[5] id. ch. 211D, § 2A, does not detract from the fact that at the time Castro was charged, probation, a fine, and jail time were all potential sentences. The "absurdity" Castro attempts to construct does not materialize because the potential alternative to Castro's probation was not merely a fine, but also included the possibility of a jail sentence of not more than six months under

---

[5] Even after the state court invoked § 2A, prison remained a possibility for Castro. Section 2A, in a part ignored by Castro, states that

> [a] judge . . . may later revoke such determination [of ineligibility for prison] on the record and appoint counsel, and on the request such counsel shall be entitled to a continuance to conduct any necessary discovery and to prepare adequately for trial.

Mass. Gen. Laws ch. 211D, § 2A (emphasis added).

-13-

Mass. Gen. Laws ch. 272, § 53.

                            III.

        For these reasons, the sentence is <u>affirmed</u>.