# United States Court of Appeals

## For the First Circuit

No. 04-2333

UNITED STATES OF AMERICA,

Appellee,

v.

JOSÉ GUILLERMO RODRÍGUEZ-GONZÁLEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Boudin, Chief Judge,

Torruella and Howard, Circuit Judges.

Rachel Brill for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney, Senior
Appellate Attorney, with whom H.S. Garcia, United States Attorney,
was on brief for appellee.

December 30, 2005

**BOUDIN**, <u>**Chief Judge**</u>.  Jose Guillermo Rodriguez-Gonzalez ("Rodriguez") was indicted by a federal grand jury for conspiring to commit credit card fraud, for aiding and abetting bank fraud and for money laundering.  18 U.S.C. §§ 371, 1344, 1956(a)(1)(h) (2000).  In substance, the indictment charged Rodriguez with participating in a ring to obtain and improperly exploit credit card numbers; his role was described as that of a "runner" who assisted other co-conspirators in the illegal acquisition of merchandise, in recruiting new conspirators and in arranging for the transfer of devices to glean account information from credit cards.

Each count of the indictment specified that Rodriguez had conspired with others "[f]rom in or about December of 2002, and continuing through in or about November of 2003."  The indictment charged Rodriguez with having committed an overt act in furtherance of the credit-card and bank-fraud offenses "[o]n or about August 18, 2003 through on or about August 20, 2003," namely, by recruiting an unnamed individual to join the conspiracy and making arrangements to transfer to him the device for gleaning information from credit cards.

Rodriguez thereafter entered into a plea agreement with the government to plead guilty to the credit-card and bank-fraud violations.  The plea agreement described the indictment's counts-- to which Rodriguez was pleading--as charging Rodriguez with

participating from December 2002 through November 2003, leaving the impression that he was accepting that premise.  In exchange, the government said in the agreement that it would dismiss the money laundering count and would recommend that Rodriguez be sentenced at the lower end of the applicable guideline range.

Rodriguez and the government also expressly agreed to specific guideline enhancements, based on the implicit assumption that he was responsible for conduct throughout the conspiracy--a loss of over $400,000, U.S.S.G. § 2B1.1(b)(1)(G), and between 10 and 50 victims, U.S.S.G. § 2B1.1(b)(2)(A).  A separate stipulation of facts attached to the plea agreement referred to the 11-month duration of the conspiracy and the $400,000 loss but did not expressly link Rodriguez' participation to any specific time period apart from noting the dates of his overt act (August 18-20, 2003).

At the change of plea hearing, the judge was explaining the nature of the charges to Rodriguez when his then-counsel conveyed to the judge Rodriguez' assertion that he "did not participate in the whole scheme of time on the conspiracy."  The judge replied:  "[E]ven if you didn't start at the beginning, you are to be held accountable just as if you had been there since the beginning and you would be responsible for the conduct of the co-conspirators, ever since the conspiracy started."  Defense counsel did not disagree, and Rodriguez proceeded with his guilty plea.

Thereafter, a presentence report was prepared setting forth the guideline calculation to which the parties had agreed in the plea agreement. The report described the full duration of the conspiracy, the amount of the loss, and the number of victims without saying anything about when Rodriguez had joined. By then Rodriguez had acquired new counsel (who also represents him on appeal) who objected that the enhancements for loss and the number of victims should be reduced or eliminated because, according to counsel, Rodriguez' participation had not been shown to extend beyond the two days of his one overt act in August 2003.

At sentencing, defense counsel pressed this same objection; the district judge rejected it. The judge had (as already noted) expressed at the plea hearing the view that Rodriguez was legally responsible for the actions of his co-conspirators from the start of the conspiracy; and the judge made clear that he believed that Rodriguez was seeking to escape from stipulations made in the plea agreement. Rodriguez was then sentenced to 46 months' imprisonment at the bottom of the 46 to 57 months range.

In the course of the sentencing, the government, seeking to refute defense counsel's suggestion that Rodriguez had joined the conspiracy only in mid-August 2003, said that it had evidence to the contrary. Although the proffer was not developed, it appears that the government may have had tape recordings indicating

that Rodriguez was, at the very least, aware of the contours of the conspiracy and its key players well before August 2003. In any event, the district judge made no independent findings as to the date of Rodriguez' joinder, apparently relying instead on the plea agreement stipulations and the judge's own view that the precise date did not matter under existing law as to late-joining conspirators.

Rodriguez then appealed to this court to contest the inclusion in the guideline calculation of the $400,000 and 10 to 50 victim enhancements. Viewing the plea agreement stipulation as clear, this court entered a judgment, whose mandate has not yet issued, summarily affirming the sentence. Then, on defense counsel's petition for rehearing, the court agreed to reexamine the matter and held an expedited oral argument. Although it is a close call, we now conclude that a remand is appropriate and supplant our earlier judgment with this decision.

There is nothing surprising in the district judge's belief, when confronted with defense counsel's objections to the enhancements, that Rodriguez was trying to back-pedal from stipulations that he had made in the plea agreement. Ordinarily, a defendant can be held to such stipulations. United States v. Teeter, 257 F.3d 14, 28 (1st Cir. 2001). Further, a special problem exists where, as here, a defendant seems to disavow his stipulations without seeking to set aside the plea agreement, as

the government has ordinarily paid a price for the agreement (although in this case defense counsel thinks that Rodriguez got little from the agreement).[1]

Over and above the stipulation as to the enhancements, the plea agreement's description of the conspiracy charge as extending for 11 months and its assertion that Rodriguez was pleading guilty to the two counts based on the indictment certainly invited a reasonable reader to understand that Rodriguez was agreeing that in fact he had participated for the full period charged. The attached stipulation of facts, although it did not say when he entered the conspiracy, said nothing that negated the agreement which indicated that he had participated throughout.

If this were the sum total of events, we would join with the district judge in thinking that the stipulation and Rodriguez' unqualified guilty plea established that Rodriguez had participated in the full conspiracy. The difficulty is that before the judge accepted the guilty plea, Rodriguez specifically told the judge that he (Rodriguez) had not been in the conspiracy from the outset. And when one looks back at the plea agreement, it becomes clear--at least in light of Rodriguez' disavowal--that it is not an airtight

_____

[1]Defense counsel did move to set aside the agreement on the ground that the enhancements were not consistent with Blakely v. Washington, 542 U.S. 296 (2004); but that claim has not been pursued on this appeal, and counsel never sought to withdraw the plea based on misunderstanding or mistaken advice given to Rodriguez as to the enhancements.

factual admission that Rodriguez participated from the beginning. Had he thought it relevant, doubtless the district judge would have sought to clear up the arguable inconsistency before accepting the plea.

The district judge did not do so because, at least in part, he relied on the generalization that a late-joining conspirator takes the conspiracy as he finds it and is responsible for what happened prior to his joinder. This is true in one context: co-conspirator statements, made even before the defendant joined the conspiracy, are admissible against him as admissions by a co-conspirator. United States v. O'Campo, 973 F.2d 1015, 1022-23 (1st Cir. 1992) (quoting United States v. Cintolo, 818 F.2d 980, 997 (1st Cir. 1987)).

Events in a conspiracy prior to a defendant's joinder may be relevant in various ways beyond the admissibility of co-conspirator statements. But there is no need to explore the ways in which such pre-joinder events might or might not be relevant to, say, the statute of limitations or the characterization of the conspiracy or Pinkerton liability. For when it comes to sentencing, the guidelines say that a defendant is responsible only for losses that occurred and victims who were injured after he joined and, then, only to the extent that they were foreseeable by him.

In the words of the Sentencing Commission, "A defendant's relevant conduct does not include the conduct of members of a conspiracy prior to the defendant joining the conspiracy, even if the defendant knows of that conduct . . . ." U.S.S.G. § 1B1.3, comment. (n.2). Rather, for sentencing purposes, the court "is required to make an individualized finding as to [the conduct] attributable to, or foreseeable by, that defendant." United States v. Colin-Solis, 354 F.3d 101, 103 (1st Cir. 2004); see also U.S.S.G. § 1B1.3. Thus, in our case, the factual question of when Rodriguez joined the conspiracy is not made irrelevant by any legal principle imposing on him liability for sentencing purposes of prior acts of the conspiracy.

Yet this leaves Rodriguez' stipulation that he was subject to the enhancements. Defense counsel says that the sentencing judge is supposed to impose the correct sentence based on the evidence regardless of the parties' stipulation, but this is too loose a statement: Teeter makes clear that a trial judge, although not required to follow a stipulation (outside Fed. R. Crim. P. 11(c)(1)©), may normally rely on the defendant's stipulation in determining what is the correct sentence.

There are qualifications on such reliance--for example, a mistaken stipulation on a matter of law--but the precise timing of Rodriguez' entry into the conspiracy is not of that kind. Indeed, there is still no affirmative evidence of record, beyond

the defendant's summary say-so at the plea hearing, that the stipulation was factually mistaken. Certainly a summary and unilateral disavowal by the defendant does not itself negate a stipulation.

Thus, our original summary affirmance of the sentence was supportable. Nevertheless, we now think that given the defendant's caveat at the plea hearing, the district judge would likely have insisted on clarifying the stipulation at the plea hearing, had it not been for the court's seeming misunderstanding as to the law governing pre-joinder conduct of co-conspirators. After all, the contradiction between what the plea agreement suggested and the defendant's own protest was stark.

Under these peculiar circumstances, we think the just course is to remand the matter to the district court for resentencing at which the court is free to reconsider afresh what weight, if any, to give to the possibly suspect stipulation. If the court determines to give the stipulation less than ordinary weight, it will presumably warn the government so that the government can muster its own evidence of the extent of Rodriguez' involvement in the conspiracy.

The case does afford lessons all around: the need for care in the drafting of plea stipulations; the distinctions to be drawn in the rules applying in different contexts to late-joining conspirators; the benefit of persistence by able defense counsel;

and the ability of the iterative judicial process to remedy mistakes, whether in the trial court or on appeal.

The petition for rehearing is <u>granted</u> and this court's judgment of July 20, 2005 is <u>vacated</u>.  The sentence is <u>vacated</u> and the matter <u>remanded</u> to the district court for resentencing in accordance with this opinion.

<u>It is so ordered</u>.