# United States Court of Appeals
## For the First Circuit

No. 03-2456

UNITED STATES,

Appellee,

v.

ORLANDO ORTIZ-TORRES, a/k/a Landy,
a/k/a Orlando Torres-Ortiz,

Defendant, Appellant.

No. 03-2458

UNITED STATES,

Appellee,

v.

OMAR COSME-PIRI, a/k/a Chiquito

Defendant, Appellant.

No. 03-2534

UNITED STATES,

Appellee,

v.

RAYMOND TORRES-SANTIAGO,

Defendant, Appellant.

No. 03-2572

UNITED STATES,

Appellee,

v.

JOSÉ RENOVALES-VÉLEZ, a/k/a Pipe

Defendant, Appellant.

———————

No. 04-1871

UNITED STATES,

Appellee,

v.

JULIO MATTEI-ALBIZU,

Defendant, Appellant.

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Dominguez, U.S. District Judge]

———————

Before

Lipez, Circuit Judge,

John R. Gibson, Senior Circuit Judge[*]

and Howard, Circuit Judge.

———————

Mauricio Hernàndez-Arroyo for appellant Orlando Ortiz-Torres.
Raúl S. Mariani-Franco for appellant Omar Cosme-Piri.
Bruce Green for appellant Raymond Torres-Santiago.

———————

[*]Of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

José R. Olmo-Rodríquez for appellant Jose Renovales-Vélez.
Luis M. Cháves-Ghigliotty for appellant Julio Mattei-Albizu.
Nelson Pérez-Sosa, Assistant United States Attorney, with whom
H.S. Garcia, United States Attorney, was on brief, for Appellee.

————————————

May 26, 2006

————————————

**John R. Gibson**, <u>Circuit Judge</u>.  Orlando Ortiz-Torres, Omar Cosme-Piri, Raymond Torres-Santiago, José Renovales-Vélez, and Julio Mattei-Albizu appeal their convictions and sentences for conspiracy to distribute multi-kilogram quantities of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846.  We affirm.

Appellants were members of a drug-trafficking organization that operated drug distribution points in and around La Plena Ward in Juana Díaz, Puerto Rico from 1994 to 2001.[1]  A grand jury indicted each of them with conspiring to distribute "multi-kilogram quantities" of heroin, cocaine, cocaine base, and marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and with a forfeiture allegation of up to $1 million pursuant to 18 U.S.C. § 982. Appellant Mattei-Albizu entered a straight plea of guilty to conspiring to possess with intent to distribute and conspiring to distribute at least 3.5 kilograms but less than 5 kilograms of cocaine.  After a jury was empaneled, the remaining appellants each pled guilty to conspiracy to possess with intent to distribute cocaine as part of a package plea agreement.

Appellants raise numerous claims of error on appeal.  Cosme-Piri and Ortiz-Torres challenge their convictions on the ground

---

[1]Because appellants' convictions and sentences followed admissions of guilt, we glean the pertinent facts from the change-of-plea colloquies, the plea agreements, the presentence reports, and the transcripts of the sentencing and change of plea hearings. <u>See</u> <u>United States</u> v. <u>Colon-Solis</u>, 354 F.3d 101, 102 (1st Cir. 2004).

that their guilty pleas were not voluntary.  Cosme-Piri, Ortiz-Torres, Renovales-Vélez, and Mattei-Albizu raise an assortment of challenges to their sentences.  Lastly, each appellant requests a remand for sentencing in accordance with United States v. Booker, 543 U.S. 220 (2005).  We address each claim in turn.

I.  Voluntary Guilty Plea

Cosme-Piri and Ortiz-Torres ask us to vacate their convictions and remand their cases for trial on the ground that their guilty pleas were not voluntary.  While the entry of a guilty plea "does not preclude an attack on the plea's voluntariness," United States v. Sahlin, 399 F.3d 27, 31 (1st Cir. 2005), because neither appellant sought to withdraw his guilty plea before the district court, we review the district court's acceptance of their pleas for plain error.  United States v. Mescual-Cruz, 387 F.3d 1, 7 (1st Cir. 2004) (citing United States v. Vonn, 535 U.S. 55, 59 (2002)), cert. denied, 543 U.S. 1175, 1176 (2005).

To establish that the district court committed error in accepting their guilty pleas, appellants must point to a "fundamental defect" in the change of plea hearing itself.  See United States v. Bierd, 217 F.3d 15, 19 (1st Cir. 2000); see also Sahlin, 399 F.3d at 31 (error must affect substantial rights).  Appellants argue that the joint change of plea hearing was fundamentally defective because it failed to ensure that their

-5-

guilty pleas, entered as part of a package plea agreement, were truly voluntary. As in many such "package plea" arrangements, the government offered the entire group of defendants charged in connection with the La Plena drug point a favorable plea and sentencing recommendation on the condition that all the co-defendants enter guilty pleas.

We have previously recognized that such package deals create a significant risk that one defendant will plead guilty against his will in order for his co-defendants to obtain the offered benefit. United States v. Abbott, 241 F.3d 29, 34 (1st Cir. 2001); United States v. Martinez-Molina, 64 F.3d 719, 732-33 (1st Cir. 1995). Thus, we have crafted two safeguards designed to minimize this risk of coercion. Mescual-Cruz, 387 F.3d at 8 (citing Martinez-Molina, 64 F.3d at 732-33). First, the prosecution should inform the district court that the defendant's guilty plea is part of a package deal. Id. Second, the district court should carefully ascertain the voluntariness of the defendant's plea during the Rule 11 colloquy, with an eye toward minimizing the risk of co-defendant coercion inherent in the package-plea context. Id.

The record of the Rule 11 proceeding below reflects that both safeguards were observed. First, there is little doubt that the district court was fully aware that all the defendants, save for Mattei-Albizu, were entering their pleas as part of a package deal. At the joint change of plea hearing, in the presence of all

defendants and their respective counsel, the government disclosed to the court that the individual pleas were part of a package deal. Indeed, on several occasions throughout the change of plea hearing the district court specifically referred to the package nature of defendants' pleas.

Second, the district court's Rule 11 inquiry was more than sufficient to guard against the risk of co-defendant coercion. The court individually questioned the defendants, asking whether they were threatened or coerced by "anyone" or "anybody" into entering their individual guilty pleas. Although this alone was likely sufficient, see, e.g., Mescual-Cruz, 387 F.3d at 9 ("anyone" or "anybody"); United States v. Sanchez-Barreto, 93 F.3d 17, 23 (1st Cir. 1996) ("anyone"), the court inquired further. It specifically named each co-defendant and asked whether any of them had threatened or coerced Ortiz-Torres or Cosme-Piri into pleading guilty, thereby probing whether the increased likelihood of co-defendant coercion in the package-plea context had affected either of their decisions to plead guilty.

In light of these additional safeguards, the district court was entitled to rely upon Cosme-Piri's and Ortiz-Torres's representations, made under oath, that they were neither coerced nor threatened into making their pleas. See United States v. Marrero-Rivera, 124 F.3d 342, 349 (1st Cir. 1997). The only indication of the contrary comes from Cosme-Piri's and Ortiz-

Torres's general allegations of coercion on appeal, which are insufficient, absent record support, to invalidate their guilty pleas.  See Sanchez-Barreto, 93 F.3d at 23.  Finding no error, plain or otherwise, in the district court's acceptance of their guilty pleas, we affirm Ortiz-Torres's and Cosme-Piri's convictions.

## II.  Sentencing Issues

The entry of a guilty plea does not itself waive a defendant's right to challenge the ensuing sentence.  United States v. Gonzalez-Mercado, 402 F.3d 294, 301 (1st Cir. 2005).  Renovales-Vélez, Cosme-Piri, Ortiz-Torres, and Mattei-Albizu advance such challenges.

### A.  Renovales-Vélez

Renovales-Vélez argues that the district court erred by failing to impose his federal sentence concurrently with his undischarged term of state imprisonment as required under Guideline §5G1.3(b) (2002).[2]  Like his co-defendants, Renovales-Vélez was

---

[2]Effective November 1, 2003, a little more than one month after Renovales-Vélez's September 30, 2003 sentencing, Guideline § 5G1.3(b) was amended.  Because neither party argues otherwise, we assume that the version in effect at the time of Renovales-Vélez's sentencing applies.  United States v. Harotunian, 920 F.2d 1040, 1041-42 (1st Cir. 1990) ("[A] defendant is to be punished according to the guidelines in effect at the time of sentencing."); see also United States v. Rouse, 362 F.3d 256, 261-62 (4th Cir. 2004) (holding that 2003 amendment to Guideline § 5G1.3(b) does not apply retroactively), cert. denied, 543 U.S. 867 (2004).

charged with distributing more than five kilograms of both cocaine and cocaine base, more than one kilogram of heroin, and more than fifty pounds of marijuana. However, also like all but one of his co-defendants, Renovales-Vélez entered into a plea agreement, pursuant to which he pled guilty to conspiracy to possess with intent to distribute at least 150 kilograms of cocaine, in return for the government's recommendation of 252 months' imprisonment. The parties further agreed that if Renovales-Vélez's presentence investigation revealed convictions for offenses that took place during the time period of the conspiracy, they would not be counted in determining his criminal history category.

Ultimately, Renovales-Vélez's presentence report listed four prior drug-related convictions in the Superior Court of Puerto Rico: on December 21, 1994, Renovales-Vélez was arrested for possession of cocaine with intent to distribute for which he was sentenced to three years' imprisonment; on January 25, 1995, he was arrested and charged with the second and third offenses, possession of marijuana and heroin with the intent to distribute, for which he was sentenced to a total of six years' imprisonment; and on February 23, 1995, he was arrested and charged with possession with the intent to distribute cocaine, for which he was sentenced to two years' imprisonment.[3] Although he received a sentence of eleven-

---

[3]The sentences for all four convictions were imposed on May 13, 1996 and ordered to run consecutively.

years' imprisonment on the four offenses, Renovales-Vélez had served only 35 months of that sentence before being transferred to federal custody to face the instant charges.

Since his prior drug offenses occurred during the period of the charged cocaine trafficking conspiracy, the presentence report recommended that they be treated as overt acts, resulting in zero criminal history points. Consistent with the recommendation of the presentence report and the agreement of the parties, the district court assessed Renovales-Vélez zero criminal history points for his prior convictions, leaving him with a criminal history category of I. Recognizing that Renovales-Vélez had been incarcerated due to these prior convictions during a significant portion of the charged conspiracy, the district court found him to be less culpable than his co-defendants, and accordingly, sentenced him to 238 months' imprisonment, rather than the 252-month sentence provided for in the plea agreement.[4]

On appeal Renovales-Vélez argues that the district court was required under Guideline §5G1.3(b)(2002) to run his federal

---

[4]The sentencing court stated:

> And the Court, because this defendant spent a considerable amount of time in jail during the conspiracy, and his participation is less than the other gentlemen who have been also sentenced by this Court, therefore, sentences him within the guideline but to a lower amount than recommended in the plea . . . .

sentence concurrently with the undischarged portion of his state term of imprisonment. Because, as Renovales-Vélez concedes, he did not object to his sentence on this ground, we employ plain error review. United States v. Cruz, 213 F.3d 1, 4 (1st Cir. 2000) (citing United States v. Olano, 507 U.S. 725, 733 (1993)). To decide whether the district court erred in imposing his sentence, we must determine whether his state offenses were "fully taken into account" in determining his offense level. See Guideline § 5G1.3(b)(2002).[5] If they were, then Guideline § 5G1.3(b) required the court to impose the federal term concurrently with the undischarged state term, which would have reduced the federal sentence by approximately 97 months—the difference between the entire eleven-year state term and the 35 months Renovales-Vélez had served on it before being transferred to federal custody. See United States v. Caraballo, 200 F.3d 20, 28-29 (1st Cir. 1999); see also U.S.S.G. § 5G1.3(b), cmt. (n.2) (2002).

---

[5]At the time of sentencing, Guideline § 5G1.3 provided:

(b) If . . . the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.

(c) (Policy Statement) In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

Renovales-Vélez argues that because his state court offenses were treated as overt acts in furtherance of the conspiracy, they were treated as relevant conduct under Guideline § 1B1.3, and therefore "fully taken into account" under Guideline § 5G1.3(b). Because Guideline § 5G1.3 "is directed at the prevention of duplicative sentencing for any particular conduct," we held in Caraballo that "only relevant conduct that has resulted in-or that could have resulted in-a change in the instant offense's 'offense level' is 'fully taken into account' under § 5G1.3(b)." Id. (emphasis in original). However, we also reasoned that mandatory concurrent sentencing would be inappropriate where the defendant's undischarged prison term was for multiple offenses, but only some of those offenses were "fully taken into account" in determining the instant offenses's offense level, since in such a situation the instant offense may involve conduct unrelated to the conduct underlying the undischarged term. Id. at 28. Accordingly, we held that "[w]hen some of the conduct underlying an undischarged term impacted the offense level, but other aspects of that conduct did not," the district court is free, under § 5G1.3(c), to choose wholly concurrent, partially concurrent, or wholly consecutive sentencing. Id. at 29.

In the instant case, we face precisely this kind of "multiple offense" situation. Renovales-Vélez's undischarged term of state imprisonment was the result of four separate offenses. Even

-12-

assuming that, in reaching its drug quantity determination and corresponding offense level, the district court took into account his two prior cocaine offenses,[6] it could not have taken into account offenses for possession of marijuana with intent to distribute and possession of heroin, since these convictions punished conduct unrelated to that punished by the instant cocaine trafficking conviction. Thus, as in Caraballo, Renovales-Vélez's undischarged state term was the result of multiple offenses, some of which may have been taken into account in setting his offense level for the federal conviction, while the rest clearly were not. 200 F.3d at 27-28. "In short, because not all of the conduct from which [Renovales-Vélez's Puerto Rico] term resulted influenced his ultimate offense level, not all of it was 'fully taken into account' under § 5G1.3(b). The court below thus correctly chose to apply § 5G1.3(c) instead." Id. at 29.

Thus proceeding under subsection (c), the district court

---

[6]The record does not conclusively demonstrate that the district court took into account the unspecified quantities of cocaine involved in Renovales-Vélez's prior cocaine offenses in determining that he was responsible for at least 150 kilograms of cocaine and assessing the corresponding offense level of 38. See U.S.S.G. § 2D1.1 (2002). Indeed, the district court stated at sentencing that it was specifically relying on Renovales-Vélez's admission in his plea that he was guilty of conspiring to possess with intent to distribute "at least 150 kilograms of cocaine" and his specific stipulation to an offense level of 38 in his plea agreement. However, because we conclude that even if his prior cocaine offenses were taken into account, Renovales-Vélez nonetheless is not entitled to wholly concurrent sentencing, we need not resolve this question.

-13-

enjoyed the discretion to impose a wholly concurrent, partially concurrent, or wholly consecutive sentence, so long as the end result was reasonable. See United States v. Vazquez-Alomar, 342 F.3d 1, 5 (1st Cir. 2003) (quoting Caraballo, 200 F.3d at 28-29). The court exercised this discretion by sentencing Renovales-Vélez to a term of imprisonment 14 months less than that stipulated to in the plea agreement, which had the effect of imposing part of his federal sentence concurrently with his undischarged state sentence, while imposing the remainder consecutively. The court specifically stated that it was imposing this sentence in recognition of the time Renovales-Vélez was incarcerated on his prior drug offenses, thereby furthering the underlying policy of Guideline § 5G1.3 in preventing "duplicative sentencing for any particular conduct." Caraballo, 200 F.3d at 27. Renovales-Vélez makes no argument that the district court abused its discretion in doing so, nor does he claim that his sentence is otherwise unreasonable. See Vazquez-Alomar, 342 F.3d at 5; see also Caraballo, 200 F.3d at 29 (affirming district court's exercise of discretion under Guideline § 5G1.3(c) to run part of defendant's federal sentence concurrent with undischarged state sentence). Accordingly, we affirm his sentence.[7]

---

[7]Had Renovales-Vélez been sentenced after the November 1, 2003 effective date of the 2003 amendments to § 5G1.3(b), which jettisoned the somewhat confusing "fully taken into account" language as well as any reference to "undischarged" terms of imprisonment, we would reach the same result. The amended

-14-

B.  Cosme-Piri

1. Drug quantity

Cosme-Piri argues that the district court sentenced him based on a flawed drug-quantity calculation.  Because he objected to the calculation at sentencing, we review any legal error of the district court de novo, United States v. Barbour, 393 F.3d 82, 91-92 (1st Cir. 2004), cert. denied, 126 S. Ct. 212 (2005), while reviewing its factual findings for clear error.  United States v. Santos, 357 F.3d 136, 140 (1st Cir. 2004).

Cosme-Piri stipulated to the scope of the conspiracy's drug trafficking operations as well as to the amount of narcotics for which he was personally responsible.[8]  Based on this stipulated

---

subsection requires concurrent sentencing:

> If . . . a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct) and that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments) . . . .

U.S.S.G. § 5G1.3(b) (2003) (emphasis added). Under this framework, Renovales-Vélez would likewise not be entitled to concurrent sentencing because he fails to demonstrate that his prior cocaine-related offenses were "the basis for an increase" in the drug quantity determination underlying the offense level for the instant cocaine trafficking offense.


[8]According to the stipulated facts in the plea agreement, each month for the duration of the conspiracy the organization sold at least five kilograms of cocaine, one kilogram of heroin, more than fifty grams of cocaine base, and approximately five pounds of

-15-

drug quantity, the parties agreed that the applicable sentencing range was from 235 to 293 months' imprisonment, and the government agreed to recommend a sentence of 252 months. At the change of plea hearing, Cosme-Piri acknowledged these stipulations and stated that he understood the terms of the plea agreement.

At sentencing, counsel for Cosme-Piri objected to the offense-level computation in the presentence investigation report. He requested that the district court lower the drug-quantity calculation because Cosme-Piri had participated in the conspiracy for a shorter period of time than other co-conspirators whose plea agreements provided for lesser drug quantities. The government responded that Cosme-Piri had specifically stipulated in his plea agreement to the amount of cocaine for which he personally was responsible and this amount was not tied to the length of his involvement in the conspiracy.

The court rejected Cosme-Piri's request and sentenced him to 252 months' imprisonment, as provided in the plea agreement. The court explained that other co-defendants had received drug-quantity reductions in return for their stipulation to leadership role enhancements, and not because their involvement in the conspiracy was any less than that originally contemplated in their plea

---

marijuana. Notwithstanding these conspiracy-wide amounts, the parties agreed that Cosme-Piri would be held responsible for "not less than one hundred fifty kilograms of cocaine" and that "such amount should be the proper drug quantity to be considered" for sentencing purposes.

agreements. This trade-off was necessary to ensure that the government's sentencing recommendation would remain 252 months' as stipulated in the plea agreements.

Cosme-Piri argues that the district court erred in sentencing him based on the stipulated drug quantity instead of making an individualized finding as to the amount of drugs specifically attributable to him. In support, he relies upon United States v. Colon-Solis, 354 F.3d 101, 102-03 (1st Cir. 2004), which held that a district court could not automatically shift a stipulated conspiracy-wide drug-quantity amount to an individual conspirator in order to trigger a statutory mandatory minimum.

However, this reliance is misplaced, since the defendant in Colon-Solis had stipulated only to the conspiracy-wide drug amount, and there remained an "open question" as to whether he personally was responsible for a lesser quantity. See id. at 102. Here, Cosme-Piri's stipulation as to the amount of drugs specifically attributable to him left no such open question. Although the district court was not required to follow this stipulation, it was entitled to rely upon it in determining the appropriate sentence, United States v. Teeter, 257 F.3d 14, 28 (1st Cir. 2001), and such reliance is not clearly erroneous, see United States v. Santos, 357 F.3d 136, 140-41 (1st Cir. 2004).[9]

_____

[9]Nor does this court's recent decision in United States v. Rodriguez-Gonzalez, 433 F.3d 165, 168 (1st Cir. 2005), call for a contrary result. Unlike the "possibly suspect stipulation" in

-17-

Cosme-Piri's second attack on the drug-quantity calculation focuses on the drug-quantity reductions granted to some of his co-conspirators.  Citing no legal authority in support, Cosme-Piri claims that, notwithstanding his plea agreement, he is entitled to a similar reduction because the district court's stated reasons for the reductions were arbitrary and not related to facts proved beyond a reasonable doubt.[10]

A review of the record convinces us that the district court's drug-quantity determination as to Cosme-Piri was anything but arbitrary; rather, it reflected, to the kilogram, the quantity

_____

Rodriguez-Gonzalez, there was nothing suspect about Cosme-Piri's drug-quantity stipulation because he did not dispute it at the change of plea hearing or at sentencing. See id. at 166-67.

[10]The discussion before the district court was, in pertinent part:

> MR. PÉREZ [counsel for Cosme-Piri]:  We were referring to the fact that he was -- this will be 150 kilograms.  And his involvement was for a shorter time than the rest of the individuals involved.  And we thought that he should be benefitting from that, from the reduced amount that some of them have been granted.
>
> THE COURT:  But some of them have been granted reduced amounts because they're going to accept the status or because of something else.  Wasn't this what you agreed to in the very beginning? . . . .
>
> [W]asn't this a reverse, sort or, agreement where you all agreed on the final number? . . . What the Court is doing is adding two points [to another co-defendant] because he is a leader, and on the other hand reducing the drugs a little bit so that you all end up in the same place which was what you had bargained for.

Cosme-Piri admitted to in his plea agreement. Once again, the court was not bound by this admission, and could have determined that he was responsible for less. Its refusal to do so was not clearly erroneous. See Teeter, 257 F.3d at 28; Santos, 357 F.3d at 140.

### 2. Term of Supervised Release

Cosme-Piri advances two arguments in favor of vacating the supervised release term of his sentence. First, he claims that the five-year term in the written judgment violated his right to be present at sentencing because the district court had announced a contrary, three-year term, at sentencing.[11] Second, Cosme-Piri argues that the drug testing condition of his supervised release improperly delegates authority to the probation officer.

We review Cosme-Piri's right to be present claim for harmless error. United States v. Meléndez-Santana, 353 F.3d 93, 108 (1st Cir. 2003), overruled on other grounds by United States v. Padilla, 415 F.3d 211 (1st Cir. 2005) (en banc). "A criminal defendant has the right to be present at his own sentencing." United States v. Vega-Ortiz, 425 F.3d 20, 22 (1st Cir. 2005). Thus, if a district court's oral sentence materially conflicts with its subsequent

---

[11]At sentencing the district judge stated, "Upon release from confinement the defendant [Cosme-Piri] shall be placed on supervised release for a term of at least three years under [certain] terms and conditions." (Emphasis added). However, the written judgment stated, "Upon release from imprisonment, the defendant shall be on supervised release for a term of Five (5) YEARS." (Emphasis added).

written expression, the tendency is to honor the oral.  Id. (quoting United States v. Cali, 87 F.3d 571, 579 (1st Cir. 1996)). However, no material conflict exists where the defendant is on notice that he is subject to the terms included in the written judgment. Vega-Ortiz, 425 F.3d at 22-23 (citing United States v. Tulloch, 380 F.3d 8, 12 (1st Cir. 2004)); see also United States v. Ferrario-Pozzi, 368 F.3d 5, 8-9 (1st Cir. 2004) (finding no material conflict between oral sentence and written judgment imposing $3.7 million forfeiture where defendant had notice that forfeiture of at least two million dollars would be component of sentence).

While there was surely a conflict between the district court's oral pronouncement of a three-year term of supervised release and the five-year term included in the written judgment, there is overwhelming evidence that Cosme-Piri knew well before the written judgment was issued that he faced a five-year term of supervised release and that the three-year term was announced in error. First, and foremost, the statute criminalizing the drug offense to which Cosme-Piri pled guilty mandates a supervised release term of "at least five-years."  See 21 U.S.C. § 841(b)(1)(A) (emphasis added).  While the mere existence of this mandatory minimum may provide sufficient "constructive notice" that a five-year term would apply, see Tulloch, 380 F.3d at 11-14, the five-year term was also included in the plea agreement, explained to Cosme-Piri and

-20-

accepted by him at the change of plea hearing, and reiterated in the presentence investigation report.

At no point did Cosme-Piri object to the length of the supervised release term. When the district court stated that it was imposing a three-year term, in contravention of the statutory minimum, the plea agreement, and the presentence investigation report, it became incumbent upon Cosme-Piri to request further clarification, which he did not do. See Tulloch, 380 F.3d at 14 n.7. Indeed, the need for clarification was especially acute in this case, since the district court's oral pronouncement of a three-year term at sentencing hearing was immediately preceded by its reference to a five-year term.[12] In this context, the district court's isolated reference to a three-year term appears to have been an inadvertent mistake. Although this reference was erroneous, the error was harmless in light of the overwhelming evidence that Cosme-Piri had notice that a five-year term would apply. See Vega-Ortiz, 425 F.3d at 21-23.

---

[12]The district court stated:

> Based on a total offense level of 38, and criminal history category one, the guideline imprisonment range in this particular case is from 235 to 293 months, with a fine range of twenty-five thousand to four million, plus a supervised release term of not more than five years.
>
> The Court will follow the plea agreement as stipulated by the parties and sentence the defendant accordingly.

(Emphasis added).

-21-

Cosme-Piri's second challenge to the term of supervised release likewise fails. Both at sentencing and in its written judgment, the district court stated that Cosme-Piri's term of supervised release would be subject to the following condition:

> The defendant . . . shall submit to a drug test within fifteen (15) days of release on supervised release, and thereafter when so requested by the U.S. Probation Officer.

Cosme-Piri argues that this condition improperly delegates authority to the probation officer to determine the frequency and quantity of drug testing.

In United States v. Meléndez-Santana, 353 F.3d 93 (1st Cir. 2003), a panel of this court held that a district court commits plain error by delegating to a probation officer the authority to determine a defendant's drug-testing regimen while on supervised release. Id. at 106 (citing 18 U.S.C. § 3583(d) (2000)).[13] Sitting en banc, our court overruled Meléndez-Santana to the extent that it held that such an improper delegation would automatically rise to the level of plain error, although the defendant was free to argue

---

[13]18 U.S.C. § 3583(d) (2000) provides in relevant part:

The court shall also order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release on supervised release and at least 2 periodic drug tests thereafter (as determined by the court) for use of a controlled substance.

(Emphasis added).

-22-

that the plain error requirements were met in the individual case. United States v. Padilla, 415 F.3d 211, 220-23 (1st Cir. 2005) (en banc). For the reasons stated in Padilla, we conclude that the improper delegation that occurred here does not rise to the level of plain error, since it neither affects substantial rights nor "impugn[s] the fairness, integrity or public reputation of the criminal proceeding as a whole." Id. at 220-23; see also Vega-Ortiz, 425 F.3d at 22; United States v. Sanchez-Berrios, 424 F.3d 65, 81-82 (1st Cir. 2005), cert. denied, 126 S. Ct. 1105 (2006). Accordingly, we decline to correct it.

C. Ortiz-Torres

Ortiz-Torres claims that, pursuant to Guideline § 3E1.1(a) (2002), the district court should have awarded him a three-level reduction for acceptance of responsibility instead of the two-level reduction he received. It was Ortiz-Torres's burden to demonstrate that he was entitled to the additional point reduction, and we will reverse the withholding of such a reduction only if clearly erroneous. United States v. Baltas, 236 F.3d 27, 37 (1st Cir. 2001). Initially, we recognize, as did the district court, that Ortiz-Torres's request for a three-level reduction contradicts his stipulation to a two-level reduction in his plea agreement. However, like the district court, we conclude that even in the absence of this stipulation, Ortiz-Torres was not entitled to a three-level reduction because his guilty plea was untimely.

-23-

A defendant qualifies for a two-level reduction for acceptance of responsibility under Guideline § 3E1.1(a) if he "clearly demonstrates acceptance of responsibility for his offense."  A defendant may receive an additional level reduction by, inter alia, "timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently."  U.S.S.G, § 3E1.1(b)(2) (2002).  As we have previously recognized, "[t]he two-level reduction is for contrition," while "the third level is for helping the authorities save resources."  United States v. Hines, 196 F.3d 270, 274 (1st Cir. 1999); see also U.S.S.G. § 3E1.1, cmt. (n.2) (2002).

Ortiz-Torres argues that his acceptance of responsibility was sufficiently timely and beneficial to the government to warrant a three-level reduction in light of the numerous witnesses and anticipated length of the trial the government and district court were able to avoid.  To earn a three-level reduction, a defendant must give notice of his intent to plead guilty "at a sufficiently early point in the process so that the government may avoid preparing for trial," which will usually be "particularly early in the case."  U.S.S.G. § 3E1.1, cmt. n.6 (2002).  Ortiz-Torres and the bulk of his indicted co-conspirators entered into the package plea deal after a jury had already been selected; the district court concluded that this was not early enough in the process to

merit a three-level reduction.[14]  This determination was not clearly erroneous.  See United States v. Donovan, 996 F.2d 1343, 1345 (1st Cir. 1993) (sustaining denial of three-level reduction for defendant who pled guilty on the eve of trial).

D.   Mattei-Albizu

Unlike his co-defendants, Mattei-Albizu was not a party to the package plea agreement.  Instead, he entered a straight plea of guilty to conspiring to sell five kilograms or more of cocaine, as alleged in the indictment, an offense that carried a statutory minimum sentence of ten years.  See 21 U.S.C. § 841(b)(1)(A) (2000).  He also admitted to participating in the conspiracy from 1997 until his September 2001 arrest.

The government stated at the change of plea hearing that if the case had gone to trial, it would have proven beyond a reasonable doubt that Mattei-Albizu conspired to distribute in excess of 150 kilograms of cocaine and that he possessed a firearm in connection to the charged drug trafficking offense.  Mattei-Albizu requested and received an evidentiary hearing to contest these sentencing factors.  At the hearing, the government presented

---

[14]As the district court explained:

If the Court were to grant you three points that would mean that everyone would wait until the jury is selected. And the law is clear that three points are granted only if it is timely.  And a plea entered after the jury has been selected is definitely not timely.

the testimony of two witnesses. The first was Victor Iglesias-Moreno, a task force agent with the Ponce, Puerto Rico Drug Enforcement Agency, who had investigated the La Plena drug point. The second witness was Josué Camacho-Aponte, an unindicted co-conspirator testifying as a material witness for the government, who had participated in the La Plena drug point from 2000-2001. Mattei-Albizu presented three witnesses to rebut any evidence that he participated in a homicide.

Following the evidentiary hearings, the district court imposed a two-level enhancement under Guideline § 2D1.1(b)(1)(2002) for possession of a dangerous weapon during the commission of a drug-trafficking offense, determined that Mattei-Albizu was responsible for in excess of 150 kilograms of cocaine, and granted him a two-level reduction for acceptance of responsibility under Guideline § 3E1.1(a)(2002). Based on a total offense level of 38 and a criminal history category of IV, the applicable guideline imprisonment range was 324 to 405 months. See Guideline § 2D1.1. (2002). The district court sentenced Mattei-Albizu to 324 months' imprisonment, the bottom of the guidelines range.

Mattei-Albizu contends that the drug-quantity determination and firearm enhancement were unwarranted and that the district court's criminal history calculation was in error. We review the district court's interpretation of the sentencing guidelines de novo and its findings of fact for clear error. United States v.

Caldwell, 358 F.3d 138, 142 (1st Cir. 2004).

    1.    Firearm enhancement

Mattei-Albizu challenges the two-level enhancement he received for possession of a dangerous weapon during the commission of a drug trafficking offense on the ground that the government failed to establish that it was reasonably foreseeable to him that firearms would be possessed in furtherance of the conspiracy. See U.S.S.G. § 2D1.1(b)(1) (2002). He argues that the government failed to prove that he was involved in any of the murders alleged to have been committed by members of the La Plena drug trafficking organization and that the district court found at sentencing that there was insufficient evidence to link him to the murders. He claims that without such proof the district court could not impose the two-level enhancement for possession of a dangerous weapon.

Mattei-Albizu's argument would gain greater traction if the government had stuck to its initial position: seeking a dangerous weapon enhancement based on proof that he was involved in a drug-related murder committed in furtherance of the charged conspiracy. However, it abandoned that theory and instead sought the enhancement under Guideline § 2D1.1(b)(1) by proving that "it was reasonably foreseeable that a co-conspirator would possess a gun in furtherance of the criminal activity." United States v. Casas, 356 F.3d 104, 129 (1st Cir. 2004); see also United States v. May, 343 F.3d 1, 7 (1st Cir. 2003). Thus, the question was not, as Mattei-

-27-

Albizu now argues, whether the government was able to prove his involvement in a murder, but rather, whether it was reasonably foreseeable to him that weapons would be used in furtherance of the conspiracy.

The district court made a finding of reasonable forseeability here, stating that it had "plenty of evidence" from which to conclude that weapons were used by members of the conspiracy and that this use of weapons was foreseeable to Mattei-Albizu. Agent Iglesias-Moreno testified that members of the La Plena organization carried a variety of weapons and handguns, with sellers carrying weapons for "keeping everything under control" at the drug point, and that he had seen weapons seized by police from members of the organization. Unindicted co-conspirator Camacho-Aponte testified that he and Mattei-Albizu were drug sellers, that sellers were always armed at the drug point, and that he personally saw Mattei-Albizu carrying weapons on several occasions when the two went out "hunting" for members of rival drug gangs in order to kill them. From this testimony, the district court could have concluded that it was reasonably foreseeable to Mattei-Albizu that a dangerous weapon would be possessed in furtherance of the conspiracy.

Pointing to Camacho-Aponte's criminal record, his hope of obtaining a more lenient sentence in cases pending against him in state court, and his desire to deter federal authorities from filing charges against him for his admitted participation in a

drug-related murder, Mattei-Albizu argues that Camacho-Aponte's testimony should have been completely disregarded as unreliable or, at the very least, considered with caution.  It is for the sentencing court to assess the credibility of the witness, and it is the for the appellate court to defer to that assessment unless it is clearly erroneous.  See, e.g., United States v. Nunez, 19 F.3d 719, 724 (1st Cir. 1996) (citing United States v. Brum, 948 F.2d 817, 819 (1st Cir. 1991)); see also 18 U.S.C. § 3742 (e) (stating that "court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses").  Indeed, in this case the district court specifically credited Camacho-Aponte's testimony due to his personal involvement in the illegal activities to which he testified, despite the court's frank recognition of the negative credibility issues surrounding the testimony.[15]  In light of the district court's careful consideration of Camacho-Aponte's credibility, we cannot

---

[15]The district court repeatedly referred to Camacho-Aponte as a "bad hombre" who "admitted to murders in front of me" and recognized that Camacho-Aponte had not been charged in the murder to which he admitted participating.  In one exchange with defense counsel in this regard, the court stated:

> I am very aware that the witness produced by the United States, Mr. Camacho, would not qualify to be working in the last ten years with Mother Teresa in Calcutta, nor with Sister Isolina in Ponce.  These were tough hombres working together selling drugs, and they were armed pursuant to the testimony of Mr. Camacho.

conclude that it was clear error for the court to rely upon it in making its dangerous weapon finding.  See, e.g., United States v. Whalen, 82 F.3d 528, 531 (1st Cir. 1996) (holding district court's finding not clearly erroneous despite crediting of testimony district court characterized as problematic).

2.  Drug quantity

Mattei-Albizu contends that there was insufficient evidence to support the district court's determination that he should be held responsible for 150 kilograms of cocaine, and therefore, he should be held responsible only for the amount he admitted to at his change of plea hearing.  As an admitted participant in a drug trafficking conspiracy, Mattei-Albizu is responsible under Guideline § 1B1.3 for drugs he himself sold, transported, or negotiated, as well as for drug quantities attributable to others that are reasonably foreseeable to him in furtherance of the conspiracy.  See U.S.S.G. § 1B1.3 cmt. (n.2) (2002); May, 343 F.3d at 6; United States v. Rivera-Maldonado, 194 F.3d 224, 228 (1st Cir. 1999).  The district court's finding as to the amount of drugs reasonably foreseeable to Mattei-Albizu need only be supported by a preponderance of the evidence and need not be exact so long as the approximation represents a reasoned estimate.  United States v. Santos, 357 F.3d 136, 141 (1st Cir. 2004).  We will set aside a drug-quantity calculation only if clearly erroneous; if there are two reasonable views of the record, the district court's choice

between the two cannot be considered clearly erroneous.  Id.

Mattei-Albizu argues that the testimony at sentencing regarding the conspiracy-wide drug-quantity was too inconsistent, and hence, too unreliable, to support an individualized drug-quantity finding.  Specifically, he points to the wide variance between the conspiracy-wide amounts testified to by Agent Iglesias-Moreno and co-conspirator Camacho-Aponte.  Though the two witnesses provided differing quantities, both testified to amounts greater than the amount the district court attributed to Mattei-Albizu.

Based on drug seizures by other agents and information provided by Camacho-Aponte, Agent Iglesias-Moreno testified that approximately two kilos each of heroin, cocaine and crack were sold out of the La Plena drug point each week.  From this, Agent Iglesias-Moreno estimated that from 1997 until 2001, the period in which Mattei-Albizu admitted to participating in the conspiracy, at least five hundred kilos of cocaine were distributed at La Plena.  However, Camacho-Aponte testified that he, like Mattei-Albizu and other sellers at La Plena, sold one kilogram each of heroin, cocaine, and crack every eight days.  The government concedes that an extrapolation of Camacho-Aponte's testimony yields a total of approximately 45 kilograms of each narcotic per year, which multiplied by the four to five years Mattei-Albizu admitted to being a member of the conspiracy, yields an amount between 180 and 225 kilograms of each narcotic, a significantly lower total than

the "at least 500 kilograms" testified to by Agent Iglesias-Moreno.

The district court recognized that the drug quantity testified to by Agent Iglesias was more than double that testified to by Camacho-Aponte at the evidentiary hearing. However, it specifically credited Camacho-Aponte's testimony and adopted Camacho-Aponte's drug-quantity estimate in finding that Mattei-Albizu was responsible for at least 150 kilograms of cocaine for an offense level of 38. See U.S.S.G. § 2D1.1(c) (2002). Because Camacho-Aponte's testimony directly supports this finding, we cannot conclude that the district court's choice between two plausible views of the record was clearly erroneous.[16] See Santos, 357 F.3d at 141. Indeed, the district court's explicit recognition that it was taking a cautious, "conservative approach" in adopting the lower of the two estimates, sufficiently insulates this finding from clear error attack. See United States v. Sklar, 920 F.2d 107, 113-14 (1st Cir. 1990).

3. Criminal history

Based on Mattei-Albizu's two prior offenses, the district court assigned him a criminal history category of IV. Mattei-

---

[16]Again, Mattei-Albizu seeks to impeach the testimony of Camacho-Aponte on appeal, arguing that his bad acts and conflict of interest made him an incredible and unreliable witness. Again, we defer to the credibility assessments made by the sentencing court. See United States v. Brewster, 1 F.3d 51, 55 (1st Cir. 1993). For the reasons stated with respect to the firearm enhancement, we conclude that the district court's decision to credit Aponte's testimony was not clearly erroneous.

Albizu claims that this was error because both prior offenses were "relevant conduct" to the instant conspiracy, and therefore neither should have been counted in calculating his criminal history category.   See U.S.S.G. §§ 4A1.2, 1B1.3 (2002).   By his calculation, if the district court had properly excluded both prior offenses, his criminal history category would have been I, or if the district court had counted one offense, but not the other, his criminal history category would have been III; in any event, he argues that his criminal history category should have been lower than the one he received.

Mattei-Albizu was convicted for possessing narcotics in 1993 and 1994, and sentenced for both offenses in 1995.  In connection with the instant conspiracy prosecution, the government filed an informative motion designating the 1993 and 1994 offenses as overt acts in furtherance of the conspiracy.   At his plea hearing, Mattei-Albizu admitted to being a member of the charged conspiracy from 1997 to 2001. Because Mattei-Albizu did not admit to being a member of the conspiracy during the time he committed his prior offenses, the presentence report recommended a criminal history category of IV to take into account the two prior offenses, rather than treating them as relevant conduct to the charged conspiracy.

Before presenting its evidence at sentencing, the government informed the district court that it would not dispute Mattei-Albizu's stipulation that his participation in the conspiracy began

in 1997.  However, in so doing, it took the position that the 1993 and 1994 offenses could no longer be considered as overt acts in furtherance of the conspiracy, and should therefore be counted towards his criminal history category.  Mattei-Albizu disputed the government's contention that the prior offenses were outside the scope of the conspiracy, citing the government's informative motion in which it had specifically designated them as overt acts.  In response, the government conceded that if the case had proceeded to trial it would indeed have sought to prove that Mattei-Albizu was involved in the conspiracy as early as 1994 and would have presented the second offense as an overt act in furtherance of the conspiracy.  However, the government reminded the court that the case was not going to trial because of Mattei-Albizu's guilty plea, which included the stipulation that he joined the conspiracy in 1997.

In attempting to sort out the parties' arguments, the district court explained that the parties had to choose between treating the prior offenses as overt acts or for criminal history purposes.  The district court chose the latter, adopting the recommendation of the presentence report and assessing Mattei-Albizu six criminal history points for the two prior offenses, as well as an additional two points because he committed the instant offense within two years after his release from imprisonment on the prior offenses.  See U.S.S.G. § 4A1.1(e) (2002).  In light of Mattei-Albizu's

stipulation that he was only a member of the conspiracy from 1997 onward, we conclude that district court correctly counted the prior offenses for criminal history purposes. There was no error in holding Mattei-Albizu to the facts to which he stipulated.

III. Booker Claims

Appellants Ortiz-Torres, Cosme-Piri, Torres-Santiago, Renovales-Vélez, and Mattei-Albizu each ask for their cases to be remanded to the district court for re-sentencing in accordance with United States v. Booker, 543 U.S. 220 (2005). Torres-Santiago, Ortiz-Torres, Renovales-Vélez, and Cosme-Piri concede that they failed to preserve their Booker claims in the district court; thus, we review their sentences for plain error. See United States v. Antonakopoulos, 399 F.3d 68, 75 (1st Cir. 2005).[17] Mattei-Albizu argues that he preserved his Booker claim by objecting to the sentencing court's drug-quantity determination. A defendant preserves Booker error by arguing to the district court that it erred under either Apprendi or Blakely or arguing that the Guidelines were unconstitutional. United States v. McLean, 409

---

[17]While conceding that he failed to preserve his Booker claim, Torres-Santiago urges us to presume prejudice because the plain error standard is "too restrictive." See, e.g., United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). A panel of this circuit has previously rejected this position, see Antonakopoulos, 399 F.3d at 79-80, and we are not free to disregard it. See United States v. Serrano-Beauvaix, 400 F.3d 50, 56 (1st Cir. 2005) (Lipez, J., concurring).

F.3d 492, 505 (1st Cir. 2005) (quoting Antonakopoulos, 399 F.3d at 76), cert. denied, 126 S. Ct. 466 (2005).  Mattei-Albizu raised no such argument before the district court.  Therefore he, like his co-conspirators, must proceed under the plain error standard.

Under that standard, a defendant must show four things: (1) that an error occurred, (2) that the error was clear or obvious, (3) that it affected substantial rights, and (4) that the error seriously impaired the fairness, integrity, or public reputation of judicial proceedings.  Antonakopoulos, 399 F.3d at 75 (citing United States v. Olano, 507 U.S. 725, 732-736 (1993)).  Because the district court treated the guidelines as mandatory at sentencing, the first two requirements are satisfied.  See, e.g., United States v. Kornegay, 410 F.3d 89, 99 (1st Cir. 2005).[18]  At issue is whether appellants satisfy the third and the fourth.

The operative question with respect to the third requirement is "whether defendant has shown a reasonable probability the sentencing judge would, in a non-mandatory Guidelines system, have imposed a more lenient sentence."  United States v. Ayala-Pizarro, 407 F.3d 25, 29 (1st Cir.), cert. denied, 126 S. Ct. 247 (2005).

---

[18]To the extent Ortiz-Torres, Cosme-Piri and Renovales-Vélez argue that the Sixth Amendment entitles them to jury findings on the factual predicates of the sentencing enhancements they received, by stipulating to the enhancements as part of their guilty pleas, they waived the right to a jury determination on these issues.  United States v. Sahlin, 399 F.3d 27, 32 (1st Cir. 2005); United States v. González-Mercado, 402 F.3d 294, 299 (1st Cir. 2005).

We are not overly demanding in our proof; where the record or a plausible proffer reasonably indicates that an advisory guideline regime might have led the sentencing judge to a different result, we will remand for resentencing. United States v. Lewis, 406 F.3d 11, 21 (1st Cir. 2005) (quoting United States v. Heldeman, 402 F.3d 220, 224 (1st Cir. 2005)). However, the mere assertion that the district court would have imposed a more favorable sentence is insufficient. McLean, 409 F.3d at 505. Instead, we require the appellant to present "specific facts" to justify a Booker remand. Kornegay, 410 F.3d at 100.

A. Torres-Santiago

Pursuant to a plea agreement, Torres-Santiago stipulated to being responsible for between 50 and 150 kilograms of cocaine for a base offense level of 36. See U.S.S.G. § 2D1.1(c)(2) (2002). He further stipulated to a two-level enhancement for possession of a firearm in relation to the charged crime, a four-level enhancement for his leadership role, and a two-level reduction for acceptance of responsibility. U.S.S.G. §§ 2D1.1(b)(1), 3B1.1(a), 3E1.1(a) (2002). With a criminal history category of I, the applicable guidelines range would have been between 292 to 365 months; the district court sentenced him to 336 months' imprisonment in accordance with the plea agreement.

Torres-Santiago argues that consideration of the sentencing factors of 18 U.S.C. § 3553(a) would have resulted in a more

lenient sentence under an advisory guideline regime.  However, he fails to indicate how any of the listed factors would have created a reasonable probability of a more lenient sentence.  See Kornegay, 410 F.3d at 100 (requiring "specific facts" to justify Booker remand, not merely recitation of sentencing factors).  Moreover, the district court's comments at sentencing suggest that Torres-Santiago would be far more likely to receive a harsher sentence, not a more lenient one, on remand.[19]  See United States v. Mercado, 412 F.3d 243, 253 (1st Cir. 2005).  Finding no prejudice, we affirm the sentence imposed by the district court.

B.    Cosme-Piri

Pursuant to a plea agreement with the government, Cosme-Piri stipulated that he was responsible for "not less than one hundred fifty kilograms of cocaine" and that "such amount should be the

_____

[19]Before sentencing Torres-Santiago to 336 months' imprisonment pursuant to the plea agreement, the district court stated:

>    Now, I'm going to respect that [plea] agreement, but I want you all to know that I barely accept it . . . because this gentleman has a few, and I mean a few murders pending in the state court.

>    You know very well that we're doing him a favor by sentencing him today because I would very well, say, let's wait until we see what happens with those murders, and when he comes back, if he's ever found in one, he's serving life.  But that was the agreement and I'm going to respect it.  But I want him to know that I have the option today to postpone until all criminal cases are finished in the local court.  And if he had any murder or any manslaughter this is a lifer, you know that.

proper drug quantity to be considered" for sentencing purposes.  He also stipulated to a two-level enhancement for possession of a firearm and a two-level reduction for acceptance of responsibility.  U.S.S.G. §§ 2D1.1(b)(1), 3E1.1(a) (2002).  The parties agreed that the applicable sentencing range under the guidelines was from 235 to 293 months' imprisonment; the district court sentenced him to 252 months as provided in the plea agreement.

Like Torres-Santiago, Cosme-Piri argues that consideration of the § 3553(a) factors would have led to a more lenient sentence under an advisory guidelines regime.  However, also like Torres-Santiago, Cosme-Piri puts forth no facts that he would offer on remand to justify a more lenient sentence, save for those arguments already considered and rejected by the district court at sentencing.  Although the district court was aware that it was not <u>required</u> to honor the 252-month sentencing recommendation stipulated to in the plea agreement, it did so nonetheless, even in the face of Cosme-Piri's claim that he was less culpable than his co-defendants due to his shorter participation in the conspiracy.  There is nothing to suggest that the district court would weigh the duration of Cosme-Piri's participation in the conspiracy any differently under an advisory guidelines regime.

C.  Ortiz-Torres

Pursuant to a plea agreement, Ortiz-Torres stipulated that he was responsible for at least 150 kilograms of cocaine.  He also

stipulated to a two-level enhancement for possession of a firearm and a two-level reduction for acceptance of responsibility. U.S.S.G. §§ 2D1.1(b)(1), 3E1.1(a) (2002). The plea agreement provided that the applicable guidelines range was between 235 and 293 months' imprisonment. However, Ortiz-Torres's presentence report recommended a two-level leadership role enhancement that he had not admitted to in the plea agreement, which would have resulted in a guidelines sentencing range of 292 to 365 months, well above the 252-month sentence stipulated to in the plea agreement.

At sentencing, this discrepancy was brought to the attention of the district court. In order to accommodate the leadership role enhancement while still honoring the 252-month sentencing recommendation, the court recommended that the parties amend the plea agreement by reducing the drug quantity from 150 kilograms to between 50 and 150 kilograms of cocaine.[20] The parties followed the district court's recommendation and amended the plea agreement accordingly. Accepting the amended plea, the district court sentenced Ortiz-Torres to the 252 months to which the parties had agreed.

---

[20]Specifically, the court stated:

This is what he agreed to, so why don't we briefly amend the plea, decrease the drugs, we remain with the amount [of] leadership that was found and it is a just solution to all. I am willing to approve it in that fashion.

-40-

Ortiz-Torres points to nothing in the record suggesting a reasonable probability that he would fare any better under an advisory guidelines regime. Indeed, he would be hard-pressed to make such a showing in light of the district court's stated desire to honor the agreed to 252-month sentence, even in the face of a contrary, and significantly higher, recommendation in the presentence investigation report. The district court's statements that it was "going out of [its] way" to honor the 252-month recommendation suggests a reasonable probability that Ortiz-Torres would receive an identical sentence on remand. Because Ortiz-Torres shows nothing to the contrary, he fails to establish that he was prejudiced by the sentencing court's enforcement of his bargain.

D.    Renovales-Vélez

In his plea agreement, Renovales-Vélez admitted responsibility for at least 150 kilograms of cocaine for a base offense level of 38. U.S.S.G. § 2D1.1(c)(1). He further stipulated to a two-level enhancement for possession of a firearm and a two-level reduction for acceptance of responsibility. U.S.S.G. §§ 2D1.1(b)(1), 3E1.1(a) (2002). Assuming a criminal history category of I, which the presentence report ultimately recommended, the applicable guidelines sentencing range was between 235 and 293 months' imprisonment. The government agreed to a sentence of 252 months' imprisonment. Recognizing that Renovales-Vélez had been

incarcerated during a significant portion of the conspiracy, the district court found him to be less culpable than his co-defendants, and, notwithstanding the government's objection, sentenced him to 238 months' imprisonment—fourteen months less than the 252-month term the parties had stipulated to in the plea agreement and three months above the bottom of the applicable guidelines range.

To establish a reasonable probability of a more lenient sentence on remand, Renovales-Vélez relies solely on the fact that his sentence was fourteen months lower than the sentence the government agreed to in the plea agreement. Although he argues that this is evidence the district court would go even lower under an advisory guidelines regime, it could just as easily indicate that the district court would exercise its discretion in an identical manner on remand. See Sahlin, 399 F.3d at 33 (finding no possible claim of prejudice where defendant receives sentence lower than that stipulated to in a plea agreement). Renovales-Vélez points to no additional facts he would present to the district court to convince it that it should go lower than the plea agreement than it already did. See McLean, 409 F.3d at 505. Moreover, the fact that the sentence he received was near the bottom of the applicable guidelines range is insufficient, standing alone, to establish prejudice. Kornegay, 410 F.3d at 99-100. Under these circumstances, Renovales-Vélez fails to show he was

prejudiced by the court's mandatory application of the sentencing guidelines.

E.  Mattei Albizu

Mattei-Albizu entered a straight plea of guilty to conspiring to sell five kilograms or more of cocaine, as alleged in the indictment, which carried a statutory minimum sentence of ten years and a maximum of life imprisonment. See 21 U.S.C. § 841(b)(1). At the change of plea hearing the government stated that if the case had gone to trial it would have proven beyond a reasonable doubt that Mattei-Albizu conspired to distribute in excess of five kilograms of cocaine and that he possessed a firearm in relation to the drug trafficking offense charged.

Following an evidentiary hearing on the drug-quantity and firearm-possession sentencing factors, the district court imposed a two-level enhancement for possession of a dangerous weapon during the commission of a drug trafficking offense. U.S.S.G. § 2D1.1(b)(1) (2002). The court further determined that Mattei-Albizu was responsible for in excess of 150 kilograms of cocaine for a base offense level of 38, U.S.S.G. §§ 2D1.1(b)(1) (2002), and granted him a two-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1(a) (2002). Based on a total offense level of 38 and a criminal history category of IV, the applicable guideline imprisonment range was 324 to 405 months. The district court sentenced Mattei-Albizu to 324 months' imprisonment.

Mattei-Albizu contends that the disparity between his 324-month sentence and the 108-month sentence received by one of his coconspirators, Jorge Lagase,[21] requires a remand so that he may be resentenced in accordance with his "real conduct." As the district court recognized, Lagase and Mattei-Albizu were not similarly situated; thus, there is no reason for their sentences to be similar. Lagase entered into a plea agreement much earlier in the prosecution of the present conspiracy and, unlike Mattei-Albizu, did not request an evidentiary hearing to contest all the facts underlying the applicable sentencing factors. Stripped of its sentencing disparity patina, Mattei-Albizu's <u>Booker</u> claim is nothing more than a challenge to the district court's drug-quantity determination, a challenge which we have already rejected. Because he fails to show prejudice as a result of the district court's mandatory application of the sentencing guidelines, we reject his <u>Booker</u> claim as well.

---

[21]Despite admitting to a supervisory role in the La Plena drug trafficking organization, Lagase was held accountable for a lesser quantity of cocaine: between 3.5 and 5 kilograms compared to Mattei-Albizu's in excess of 150 kilograms. In addition, unlike Mattei-Albizu, Lagase did not receive a two-level enhancement for possession of a dangerous weapon. Accordingly, Lagase received a significantly lower sentence than did Mattei-Albizu: 108 months' imprisonment as compared to 324 months.

IV.  Conclusion

The convictions and sentences imposed by the district court are **affirmed.**